IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. AUGUSTO BASTIDAS,<br><br>　　　　Plaintiff,<br>　v.<br><br>GOOD SAMARITAN HOSPITAL, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　／ | No. C 13-04388 SI<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Now before the Court are defendants' motions to dismiss the complaint, and defendant HCA, Inc.'s motion to strike. These motions are scheduled to be heard on March 14, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons below, the Court hereby GRANTS defendants' motions to dismiss and DENIES AS MOOT HCA, Inc.'s motion to strike.

**BACKGROUND**

The following facts are drawn from allegations in the complaint. Plaintiff J. Augusto Bastidas is a medical doctor, specializing in surgical oncology. Compl. ¶¶ 1, 13. Although plaintiff was born in Colombia, he received his education primarily in the United States. *Id.* ¶¶ 1, 12. On September 22, 2004, plaintiff was appointed to the medical staff of defendant Good Samaritan Hospital[1] ("GSH"). *Id.* ¶ 38. Pursuant to his appointment at GSH, plaintiff had both a written contract, and an implied-in-fact contract with GSH. *Id.* ¶ 41.

---

[1] Plaintiff names as defendants Good Samaritan Hospital LP, Samaritan LLC, Good Samaritan Hospital Medical Staff, an unincorporated association, as well as individuals Steven Schwartz and Bruce Wilbur. For purposes of this motion, the Court will refer to these three entities and two related individual defendants collectively as "GSH."

1  After plaintiff was offered the position with GSH, but before he accepted it, Dr. Carl Bertelsen,[2] a member of an competing physicians group, lobbied against plaintiff being given this position. *Id.* ¶ 27, 92. Plaintiff alleges that the offer was then withdrawn, although it was apparently reextended to him at some undisclosed point in 2004, given that he was appointed to the staff in September of 2004. *Id.* ¶¶ 38, 92. Plaintiff alleges that he understood, "given the custom and history at GSH," that the withdrawal of his offer "was based on racial bias." *Id.* ¶ 92. An undisclosed individual warned plaintiff "that if he got 'outside the box' at GSH he would be blackballed."[3] *Id.* ¶ 92.

The events that gave rise to this case began on September 23, 2009. Following an extensive evaluation of cancer patient "JH," plaintiff performed a "Whipple" procedure on JH. *Id.* ¶¶ 43-46. During the surgery, plaintiff noticed a mass behind JH's main tumor mass that he thought was the mass of enlarged lymph nodes that had been identified before the Whipple procedure began. *Id.* ¶ 47. Plaintiff removed the mass, which was later determined to be not a mass of lymph nodes, but JH's right kidney. *Id.* Reimplantation of the kidney was considered, but plaintiff decided not to do so given that the kidney was not healthy. *Id.* As plaintiff continued to attempt to remove JH's tumor, JH's superior mesenteric artery was damaged, prompting the abandonment of the surgery. *Id.* ¶ 48. JH went into multi-organ failure the following morning. *Id.* ¶ 49. Because she had made it clear prior to the surgery that she did not want any extraordinary measures taken, JH died on the third day following the Whipple surgery. *Id.* ¶ 50.

On September 23, 2009, immediately after plaintiff attempted to perform the Whipple procedure on JH, defendant Dr. Steven Schwartz approached plaintiff and expressed concerns about the surgery. *Id.* ¶ 51. After conferring with the Chairman of the Department of Surgery, defendant Dr. Bruce Wilbur, Dr. Schwartz summarily suspended plaintiff's privilege to perform the Whipple procedure at GSH. *Id.* ¶¶ 52-53.

On September 24, 2009, Dr. Schwartz convened a committee to discuss the matter. *Id.* ¶ 55. The committee determined that "a limited suspension of privileges, for performance of the Whipple

---

[2] Dr. Bertelsen is not a defendant in this case.

[3] Although this quotation is not specifically attributed to Dr. Bertelsen, it appears from the context of the complaint that plaintiff alleges that Dr. Bertelsen made this statement.

2

procedure, was appropriate and necessary." *Id.* However, plaintiff alleges that his suspension was subsequently expanded to prevent him from performing less complex pancreatectomy procedures as well. *Id.*

On September 30, 2009, GSH's Medical Executive Committee (sometimes "MEC") met to review the summary actions taken against plaintiff. *Id.* ¶ 59. The committee affirmed the summary suspension and expanded it to include both "Whipple procedures *and* pancreatic resections as a primary *and as an assistant* . . . ." *Id.* (emphasis in original). On October 22, 2009, plaintiff notified the committee that he was requesting a hearing on the matter. *Id* ¶ 60. As required by law, the MEC commissioned a review of plaintiff's actions. *Id.* ¶ 64. The review concluded that plaintiff's actions in the care of JH fell below the applicable standard of care. *Id.* ¶ 65.

Over the next several years, the parties engaged in numerous hearings regarding the suspension of plaintiff's privileges. *Id.* ¶¶ 66- 85. On September 11, 2012, a final decision was issued by the hospital's Judicial Review Committee (sometimes "JRC"), finding the initial suspension of plaintiff's privileges "reasonable and warranted" under the circumstances. *Id.* ¶ 87. It also found that the further expansion of his suspension was warranted as well. *Id.* Plaintiff alleges that, at some time after the decision was issued, Dr. Bertelsen commented to colleagues at a different hospital "that they should watch out for [plaintiff] because he was 'outside the box.'" *Id.* ¶ 92. Plaintiff further alleges that, at some point following one of the JRC's hearing, Dr. Schwartz told plaintiff: "you got stepped on, and you and I both know who did it." *Id.* ¶ 86. Plaintiff was, and still is, unsure "who his accusers were or precisely what their accusations and motivations were." *Id.* Plaintiff appealed the JRC's decision to the GSH Board of Trustees, which affirmed the ruling in December, 2012. *Id.* ¶¶ 88-89. Also in 2012, plaintiff was elected as Chief of the Good Samaritan Division of General Surgery. *Id.* ¶ 13.

On September 20, 2013, plaintiff filed this suit, naming as defendants GSH, its parent company HCA, Inc. ("HCA"), Dr. Steven Schwartz, and Dr. Bruce Wilbur. On December 2, 2013, the defendants moved to dismiss the complaint. On December 23, 2013, plaintiff filed an amended complaint. In the amended complaint, plaintiff alleges: (1) the defendants engaged in racial discrimination against him, in violation of 42 U.S.C. § 1981; and (2) the defendants denied him due process, in violation of 42 U.S.C. § 1983.

3

1  GSH now moves to dismiss plaintiff's complaint for failure to state a claim upon which relief 2 can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). HCA joins in GSH's motion, and 3 also moves separately for dismissal. HCA also moves to strike certain portions of the complaint 4 pursuant to Federal Rule of Civil Procedure 12(f).

## LEGAL STANDARD

7  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a 8 claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This 9 "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer 10 possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While 11 courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to 12 "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that 13 offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not 14 do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it 15 tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. 16 at 557). "While legal conclusions can provide the framework of a complaint, they must be supported 17 by factual allegations." *Id.*

18  In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the 19 complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 20 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are 21 merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.* 22 *Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials 23 beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th 24 Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of 25 "matters of public record," such as prior court proceedings, without thereby transforming the motion 26 into a motion for summary judgment. *Id.* at 688-89. If the Court dismisses a complaint, it must decide 27 whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should 28 grant leave to amend even if no request to amend the pleading was made, unless it determines that the

4

pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). When a claim is stricken, "leave to amend should be freely given," provided no prejudice results against the opposing party. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

**DISCUSSION**

GSH argues that plaintiff's complaint should be dismissed because: (1) plaintiff has not adequately alleged that the defendants intentionally discriminated against him on the basis of his race, with regard to a statutorily enumerated activity, as required for a claim under 42 U.S.C. § 1981; and (2) GSH is not a state actor, as required for a claim under 42 U.S.C. § 1983. HCA joins in GSH's arguments, and further contends that the claims against it must be dismissed because, as a parent company, it is not responsible for the alleged actions of its subsidiary, GSH. HCA also moves to strike certain portions of the complaint. The Court will address each argument in turn.

**1. Plaintiff's Claim Under 42 U.S.C. § 1981.**

The defendants argue that plaintiff's § 1981 claim must be dismissed because he has failed adequately to allege that the defendants intentionally discriminated against him on the basis of race.

To establish a discrimination claim under § 1981, a plaintiff must demonstrate that: (1) he is a member of a racial minority; (2) the defendant intentionally discriminated against the plaintiff on the basis of race; and (3) the discrimination concerned at least one statutorily enumerated activity, such as the making or enforcement of contracts. *See Ennix v. Stanten*, No. C 07-02486 WHA, 2007 WL 2462119, at *8 (N.D. Cal. Aug. 28, 2007). To successfully make a claim under § 1981, a plaintiff must establish that the defendant's intentional racial discrimination resulted in the impairment of, or prevented the creation of, a contractual relationship. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S.

5

470, 476 (2006). Importantly, "[s]ection 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

Plaintiff has not alleged sufficient facts to establish a viable claim under § 1981. The contractual disruption upon which plaintiff's claim is premised is the suspension of his privileges in September of 2009. Plaintiff has not met his burden of alleging that his suspension was racially motivated.

Plaintiff argues that Dr. Bertelsen's statement that if plaintiff "got outside the box" he would be "blackballed" should be understood to be motivated by racial animus. *See* Plaintiff's Opposition to Good Samaritan Defendants' Motion to Dismiss ("Opp'n") at 13-14. This argument is flawed for at least three reasons. First, plaintiff has failed to allege any facts that would reasonably support such an interpretation of this facially neutral statement. Indeed, the phrasing indicates that it would be plaintiff's actions that might put him "outside the box," not his Colombian birth. Second, plaintiff fails to allege that Dr. Bertelsen is his employer or supervisor; that is, that Dr. Bertelsen is an individual with the power to interfere with plaintiff's contract. Instead, plaintiff describes Dr. Bertelsen simply as a member of a competing physicians' group. Compl. ¶ 27. Third, Dr. Bertelsen allegedly made this, or a functionally similar statement, on two occasions, neither of which is directly related to the suspension of plaintiff's privileges. The first statement, not directly attributed to Dr. Bertelsen, was made in 2004, five years before the alleged interference with plaintiff's contract occurred. *See id.* ¶¶ 27, 92. The second statement, which is directly attributed to Dr. Bertelsen, was made to an unrelated third party at some undisclosed point during plaintiff's review process. *Id.* ¶ 92. Thus, neither statement rationally supports the conclusion that plaintiff's privileges were revoked by defendants due to racial bias.

Plaintiff further argues that he has amply demonstrated that minority physicians at GSH received disparate treatment from their white colleagues. Opp'n at 14-15. In support, he cites multiple instances in which minority physicians at GSH were the subjects of adverse employment actions. Even assuming that plaintiff is correct that these adverse actions against other doctors were racially motivated, they are irrelevant to his § 1981 claim. To establish a viable claim under this section, plaintiff must allege "injuries flowing from a racially motivated breach of [his] own contractual relationship, not of someone else's." *Domino's Pizza*, 546 U.S. at 480. Thus, plaintiff's examples of other physicians' hardships are unavailing.

6

Plaintiff also asserts that he has alleged facts giving rise to a retaliation claim under § 1981. He argues that, in May of 2009, he helped an Indian physician contest the termination of her privileges at GSH. Compl. ¶ 100. He alleges that he was retaliated against because he helped her fight her suspension. *Id.* However, plaintiff has not alleged sufficient facts from which the Court can conclude either that the adverse action against the other physician was racially motivated, or that plaintiff's assistance of the other physician was causally related to the suspension of plaintiff's surgical privileges. These facts, therefore, cannot support a claim for retaliation under § 1981.

Accordingly, the Court finds that plaintiff has failed to allege a viable cause of action under 42 U.S.C. § 1981. However, it is possible that, if given leave to amend, plaintiff may be able to allege sufficient facts to support this claim. Therefore, the Court GRANTS defendants' motion to dismiss plaintiff's first cause of action, with leave to amend.

**2.      Plaintiff's Claim Under 42 U.S.C. § 1983.**

The defendants argue that plaintiff's § 1983 claim must be dismissed because the defendants are not state actors. Plaintiff contends that the statutorily mandated peer review proceedings in which the defendants must participate transforms the defendants into state actors.

Section 1983 is not a substantive source of rights; instead it provides a method by which plaintiffs may vindicate rights conferred elsewhere. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a claim under § 1983, a plaintiff must demonstrate that: (1) he was deprived of a right "secured by the Constitution and laws of the United States," and (2) that the deprivation was accomplished by an individual "acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). The central inquiry is, therefore, whether the actions leading to the deprivation of the right are "fairly attributable to the State." *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922, 937 (1982). To this end, courts apply a two-prong test, asking: (1) whether the deprivation was "caused by the exercise of some right or privilege created by the state or by a person for whom the State is responsible," and (2) whether "the party charged with the deprivation . . . may fairly be said to be a state actor." *Id.*

7

Generally, private individuals and entities cannot be held liable under § 1983, because this section "excludes from its reach merely private conduct, no matter how discriminatory or wrong." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). Thus, the Court must begin "with the presumption that conduct by private actors is not state action." *Florer v. Congregation Pidyon Shevuyim*, 639 F.3d 916, 922 (9th Cir. 2011). It is the plaintiff's burden to prove otherwise. *Id.* (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

The Ninth Circuit has approved four tests for determining when a private entity's actions may be fairly attributable to the state: (1) the public function test; (2) the joint action test; (3) the governmental compulsion or coercion test; and (4) the governmental nexus test. *See Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Id.* However, mere state regulation of a private entity is insufficient to establish state action. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974).

The Ninth Circuit squarely addressed the question of whether a private hospital engaging in statutorily mandated peer review proceedings is a state actor in *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1989). Dr. Pinhas alleged that the peer review proceedings in which the hospital engaged concerning the suspension of his privileges violated his due process rights under § 1983. *Id.* at 1033. The court held that the hospital's actions could not be attributed to the state of California. *Id.* at 1034. The court noted that "[o]nly private actors were responsible for the decision to remove Pinhas." The court concluded that simply because "the decision was made pursuant to a review process that has been approved by the state is of no consequence: the decision ultimately turned on the judgments made by private parties according to professional standards that are not established by the State." *Id.* (citation and internal quotation marks omitted).

Plaintiff argues that *Pinhas* does not control the issue presented in this case, however, because California did not enact Business & Professions Code sections 809 et seq. – the code sections relevant to the hospital peer review process – until after *Pinhas* was decided. Opp'n at 20. Section 809 was enacted as part of the California legislature's decision to opt-out of the federal Health Care Quality Improvement Act of 1986, and provides that "the laws of this state provide a more careful articulation of the protections for both those undertaking peer review activity and those subject to review, and better

8

integrate public and private systems of peer review." Cal. Bus. & Prof. Code § 809(a)(9). Plaintiff contends that the comprehensive and mandatory nature of the relevant code sections transforms even private hospitals into state actors when they are engaging in the peer review process. Opp'n at 22-24.

Plaintiff has not met his burden of establishing that GSH, a private hospital, is a state actor. *See Florer*, 639 F.3d at 922. *Pinhas* is still controlling law in the Ninth Circuit. Indeed, as recently as 2011 – long after the California legislature enacted sections 809 et seq. – the Ninth Circuit cited *Pinhas* with approval for the proposition that "compliance with [a] statutorily created system of physician peer-review and with reporting requirements is insufficient to establish state action." *Chudacoff*, 649 F.3d at 1149. In *Chudacoff*, the Ninth Circuit held that a publicly created hospital, supported through public funds, was a state actor, noting that "there is no dispute that the operation of a public hospital is state action and that a public hospital is required to meet the provisions of the Fourteenth Amendment . . . ." *Id.* at 1150 (citation and alterations omitted). The court further noted that it did not consider this a difficult case, stating "[t]his is not the case of a private hospital whose only state link is its subjection to state regulation." *Id.* at 1149. In other words, the hospital in *Chudacoff* was not like the private hospital at issue in *Pinhas*. *Pinhas* still applies in the context of a private hospital, and the Court is bound to follow it.

Furthermore, at least one court within the Ninth Circuit has addressed the same argument plaintiff makes here and concluded that *Pinhas* still controls and that private hospitals are not transformed into state actors by virtue of their compliance with California's statutory scheme. *See Safari v. Kaiser Found. Health Plan*, No. C 11-05371 JSW, 2012 WL 1669351 (N.D. Cal. May 11, 2012). In *Safari*, the court rejected the plaintiff's contention that *Pinhas* was no longer relevant in the peer review context following the enactment of sections 809 et seq. *Id.* at *9. The court stated that, even though section 809 mandated a particular review process, the ultimate decisions the hospital made were private decisions, made by private citizens, according to professional standards that are not established by the state. *Id.* Accordingly, the court concluded that the defendant hospital was not a state actor. *Id.*

The Court finds that plaintiff has failed to meet his burden of establishing that the defendants' actions in this case were fairly attributable to the state. The Court concludes that the defendants were

9

1  not acting under color of state law, and plaintiff therefore fails to state a claim under § 1983. Although
2  normally a court should grant leave to amend, the Court finds that plaintiff cannot allege any facts to
3  establish that the defendants are state actors; leave to amend would therefore be futile. Accordingly,
4  the Court GRANTS defendants' motion to dismiss plaintiff's second cause of action for violation of 42
5  U.S.C. § 1983, with prejudice.

**3.     HCA's Motion to Dismiss.**

Defendant HCA joins GSH's motion, and also moves separately to dismiss plaintiff's claims against it. HCA is the parent company to the GSH defendants. Compl. ¶ 17.

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and internal quotation marks omitted). However, when a corporate parent directly participates in its subsidiary's alleged bad acts, it may be directly liable. *Id.* at 64-65. Thus, when "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management and the parent is directly a participant in the wrong complained of," the corporate parent may be directly liable. *Id.* at 64 (citation and internal quotation marks omitted).

Plaintiff has not alleged sufficient facts from which the Court can conclude that HCA is directly liable for the suspension of his privileges. Plaintiff alleges that HCA implemented a Corporate Integrity Agreement, involving the distribution of a Code of Conduct ("COC") to all its subsidiaries. Compl. ¶ 119. All employees of HCA and its subsidiaries were required to sign and abide by the COC. *Id.* ¶¶ 119-120. However, the implementation of a set of "general policies and procedures" by which subsidiaries must abide is not inconsistent with a corporation's distinct status as a parent. *Bestfoods*, 524 U.S. at 72 ("The critical question is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility."). Plaintiff has not alleged sufficient facts to demonstrate that HCA's implementation of a required COC constituted direct participation in the wrong he alleges – the suspension of his surgical privileges.

10

Plaintiff argues that HCA is liable because HCA was involved in processing privileging requests at GSH. Compl. ¶ 123. However, plaintiff fails to allege that HCA was involved at all – directly or indirectly – in GSH's decision to temporarily suspend plaintiff's privileges in 2009. Additionally, even if HCA was directly involved in GSH's decision to temporarily suspend plaintiff's surgical privileges, "a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status.'" *See Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *Bestfoods*, 524 U.S. at 69). Plaintiff has failed to allege any facts indicating that HCA's involvement with GSH was in any way inconsistent with its status as an investor.

Accordingly, the Court finds that plaintiff has failed to state a claim against HCA. However, the Court cannot say at this early stage that it would be impossible for plaintiff to allege facts that would support direct liability against HCA. Therefore, the Court GRANTS HCA's separate motion to dismiss, with leave to amend.

**4.   HCA's Motion to Strike.**

HCA also moves to strike portions of the complaint. However, because the Court has granted the defendants' motions to dismiss in their entirety, the Court DENIES AS MOOT HCA's motion to strike.

**CONCLUSION**

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby GRANTS the defendants' motion to dismiss plaintiff's § 1981 claim, with leave to amend; GRANTS the defendants' motion to dismiss plaintiff's § 1983 claim, with prejudice; and GRANTS HCA's separate motion to dismiss, with leave to amend. Any amended complaint must be filed **not later than April 16, 2014**. This Order resolves Docket Nos. 41, 42, and 43.

**IT IS SO ORDERED.**

Dated: March 13, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

11