IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. AUGUSTO BASTIDAS,<br><br>    Plaintiff,<br><br>   v.<br><br>GOOD SAMARITAN HOSPITAL, et al.,<br><br>    Defendants.<br>                                / | No. C 13-04388 SI<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Now before the Court are defendants' motions to dismiss the complaint, and defendant HCA, Inc.'s motion to strike. These motions are scheduled to be heard on July 11, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons below, the Court hereby GRANTS defendants' motions to dismiss, with limited leave to amend, and DENIES AS MOOT HCA, Inc.'s motion to strike.

**BACKGROUND**

The Court set forth a detailed factual background in its prior Order in this case, and therefore will not repeat it here. *See* Dkt. No. 56 at 1-3. In brief, plaintiff is a Colombian-born medical doctor, specializing in surgical oncology. SAC ¶ 1. Following a complicated surgery that resulted in the death of a patient, plaintiff's surgical privileges were limited or suspended and plaintiff was subjected to peer review proceedings. *Id.* ¶¶ 57-111.

On September 20, 2013, plaintiff initiated this action, naming as defendants Good Samaritan Hospital LP, Samaritan LLC, Good Samaritan Hospital Medical Staff, an unincorporated association, and individuals Steven Schwartz and Bruce Wilbur (collectively, "GSH"), and GSH's parent company HCA, Inc. ("HCA"). On December 23, 2013, plaintiff amended his complaint, alleging violations of 42 U.S.C. §§ 1981 and 1983. The Court granted defendants' motion to dismiss the amended complaint, but granted leave to amend the § 1981 claim. On April 16, 2014, plaintiff filed his second amended complaint ("SAC").

GSH now moves to dismiss the SAC for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). HCA joins in GSH's motion, and also moves separately for dismissal. HCA also moves to strike certain portions of the complaint pursuant to Federal Rule of Civil Procedure 12(f).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*

2

*Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id.* at 688-89. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001). When a claim is stricken, "leave to amend should be freely given," provided no prejudice results against the opposing party. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

## DISCUSSION

GSH moves to dismiss the SAC, arguing that plaintiff has again failed to adequately allege that defendants intentionally discriminated against him based on his race, with regard to a statutorily enumerated activity, as required for a claim under § 1981. HCA joins in GSH's arguments, and further contends that the claims against it must be dismissed because, as a parent company, it is not responsible for the alleged actions of its subsidiary, GSH. HCA also moves to strike certain portions of the complaint. The Court shall address each argument in turn.

**1.    Plaintiff's 42 U.S.C. § 1981 Claim.**

Defendants argue that plaintiff's § 1981 claim must be dismissed because he has failed to establish that the defendants intentionally discriminated against him on the basis of race.

To establish a discrimination claim under § 1981, a plaintiff must demonstrate that: (1) he is a member of a racial minority; (2) the defendant intentionally discriminated against the plaintiff on the

3

basis of race; and (3) the discrimination concerned at least one statutorily enumerated activity, such as the making or enforcement of contracts. *See Ennix v. Stanten*, No. C 07-02486 WHA, 2007 WL 2462119, at *8 (N.D. Cal. Aug. 28, 2007). A plaintiff pursuing a § 1981 claim cannot rely upon disparate impact evidence to make his case; instead, he must allege that the defendants purposefully discriminated against him. *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389-91 (1982); *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 536 (9th Cir. 1982) ("[S]ection 1981 is limited to claims of intentional discrimination."). To successfully state a claim under § 1981, a plaintiff must establish that the defendant's intentional racial discrimination resulted in the impairment of, or prevented the creation of, a contractual relationship. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Importantly, "[s]ection 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

A plaintiff may establish intentional discrimination under § 1981 in two ways; he may allege facts that would support a finding of disparate treatment under Title VII, *see Gay*, 694 F.2d at 539, or he may allege facts that would support a finding of retaliation, *see CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008).

### A.     Disparate Treatment.

To establish a prima facie case of disparate treatment, a plaintiff must allege facts demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position he sought or held; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated differently. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

The Court finds that plaintiff has failed to sufficiently allege facts supporting his claim of intentional discrimination under a disparate treatment theory. The adverse employment action plaintiff alleges is the suspension of his privileges and subsequent review process. Although his complaint is replete with allegations that white physicians were treated differently than plaintiff, he fails to support these bare allegations with sufficient facts to survive a motion to dismiss. Indeed, plaintiff points to only two situations in which white physicians performed surgeries resulting in their patients' deaths and

were then not subject to revocation of their privileges or peer review action. *See* SAC ¶ 128. However, plaintiff fails to allege facts supporting the conclusion that these two doctors were similarly situated to him; that is, that their surgeries were similar to plaintiff's failed surgery, and that their treatment of their patients was of the type that might trigger privileging and peer review actions. Many, if not all, surgeons occasionally lose a patient. The mere allegation that these two doctors were among that less-than-exclusive group is insufficient to support a claim of intentional discrimination based on a disparate treatment theory.[1]

Accordingly, to the extent plaintiff's § 1981 claim is premised on intentional discrimination as demonstrated through disparate impact, it must fail. However, it is possible that plaintiff may be able to allege specific facts showing that other doctors not of his race were similarly situated to him, in that they performed comparable surgeries and made comparable errors, but did not suffer privileging and peer review outcomes as did plaintiff. Accordingly, the Court GRANTS defendants' motion as to plaintiff's disparate impact theory, with leave to amend.

**B.    Retaliation.**

To state a claim for retaliation under § 1981, a plaintiff must allege that: (1) he engaged in protected activity opposing an unlawful employment practice; (2) he suffered an adverse employment action; and (3) there was a causal link between the activity and the adverse employment action. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003); *see also Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 801 (9th Cir. 2003) (applying Title VII retaliation standard in § 1981 retaliation claim).

Plaintiff's claim fails under the first prong. None of the activities in which he claims to have engaged are protected activities. For example, plaintiff alleges that, in 2008, some of his patients were not afforded adequate nursing care. SAC ¶ 129. He alleges that he complained, but no peer review or suspensions were forthcoming. *Id.* He further alleges that he protested the termination of a fellow

---

[1] The Court also notes that plaintiff continues to allege that stray remarks made by other doctors at the hospital support an inference of racial animus, as does GSH's treatment of other minority doctors. For the same reasons stated in the Court's prior Order, these allegations are insufficient to demonstrate that defendants intentionally discriminated against plaintiff due to his race. *See* Dkt. No. 56 at 4-5.

5

1  doctor in 2009, which the Court previously found an insufficient basis for a retaliation claim. *See* Dkt.
2  No. 56 at 7. Plaintiff also alleges that he filed a declaration supporting a conclusion of substandard
3  nursing care, in connection with a wrongful death lawsuit brought against GSH. SAC ¶ 131. He alleges
4  that this took place a mere two weeks prior to the failed surgery that sparked this controversy. *Id.*
5  While filing a declaration may arguably be protected activity under § 1981 – which protects, *inter alia*,
6  the right to contract, and the rights to sue, be a party, and give evidence – there is no allegation that
7  defendants engaged in any unlawful activity against which plaintiff protested. Instead, plaintiff simply
8  alleges that he believed one of his patients received substandard postoperative nursing care, and
9  recorded this conclusion in a declaration. *See id.*

10  Accordingly, to the extent plaintiff's § 1981 claim is premised on a retaliation theory, it must
11  fail. Although plaintiff has had three opportunities to frame this cause of action, the SAC is still fatally
12  insufficient. However, the Court cannot say that it is impossible that plaintiff may be able to allege facts
13  in support of a retaliation theory. Therefore, the Court GRANTS defendants' motion as to plaintiff's
14  retaliation theory, with leave to amend.

16  **3.   HCA's Motion to Dismiss.**

17  Defendant HCA joins GSH's motion, and also moves separately to dismiss plaintiff's claims
18  against it. HCA is a holding company, the parent company to GSH. SAC ¶ 36.

19  "It is a general principle of corporate law deeply ingrained in our economic and legal systems
20  that a parent corporation (so-called because of control through ownership of another corporation's stock)
21  is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation
22  and internal quotation marks omitted). A parent corporation may be "directly involved in the activities
23  of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's
24  investor status.'" *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quoting *Bestfoods*, 524 U.S.
25  at 72). Normal parental involvement includes: "monitoring of the subsidiary's performance, supervision
26  of the subsidiary's finance and capital budget decisions, and articulation of general policies and
27  procedures." *Bestfoods*, 524 U.S. at 72. However, when a corporate parent directly participates in its
28  subsidiary's alleged bad acts, it may be directly liable. *Id.* at 64-65. Thus, when "the alleged wrong can

6

1 seemingly be traced to the parent through the conduit of its own personnel and management and the
2 parent is directly a participant in the wrong complained of," the corporate parent may be directly liable.
3 *Id.* at 64 (citation and internal quotation marks omitted).

4     Plaintiff has not alleged sufficient facts to support liability for HCA. In its prior Order, the Court
5 rejected plaintiff's argument that the implementation of HCA's Code of Conduct at all of its subsidiaries
6 – including GSH – constituted direct participation in the complained-of privileging and peer review
7 actions. Dkt. No. 56 at 10. The Court also rejected plaintiff's contention that HCA's earlier
8 involvement in processing privileging requests was inconsistent with its status as an investor. *Id.* at 11.
9 Plaintiff now alleges that GSH's CEOs (Mr. Piché up to 2009 and then Dr. Beaupre) were acting in their
10 capacities as HCA's employees, rather than GSH's officers, when they suspended plaintiff's surgical
11 privileges.

12     It is a "well established principle [of corporate law] that directors and officers holding positions
13 with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately,
14 despite their common ownership." *Bestfoods*, 524 U.S. at 69 (citation and internal quotation marks
15 omitted). Courts generally presume that such dual status individuals wear their "parent hats" when
16 serving the parent's interests, and their "subsidiary hats" when serving the subsidiary's interests. *Id.*
17 To defeat this presumption, a plaintiff would need to allege facts demonstrating that the dual status
18 individuals were acting in the parent's interest, and not the subsidiary's, when they engaged in the
19 challenged conduct. *See id.* at 70.

20     Plaintiff has alleged no facts demonstrating that GSH's CEOs acted in other than what they saw
21 as GSH's best interests throughout the facts giving rise to this case. Although plaintiff may – and
22 clearly does – disagree that those actions were in fact in GSH's best interests, he cannot simply ignore
23 the presumption that dual status individuals can and do represent both parents and subsidiaries without
24 conflict.

25     Accordingly, the Court finds that plaintiff has once again failed to allege facts that would support
26 direct liability for HCA. The dearth of additional facts in the SAC leads the Court to believe that
27 amendment would be futile. Therefore, the Court GRANTS HCA's motion, with prejudice. Because
28

7

this means that HCA is no longer a party to this case, the Court DENIES AS MOOT HCA's motion to strike.

## CONCLUSION

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby GRANTS GSH's motion to dismiss, with leave to amend; GRANTS HCA's motion to dismiss, with prejudice; and DENIES AS MOOT HCA's motion to strike. Any amended complaint, pertaining only to the GSH defendants, must be filed **not later than August 6, 2014**. This Order resolves Docket Nos. 63, 64, and 65.

**IT IS SO ORDERED.**

Dated: July 7, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

8