UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. AUGUSTO BASTIDAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GOOD SAMARITAN HOSPITAL LP, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-04388-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 84 |

Now before the Court are defendants' motions to dismiss the complaint. These motions are scheduled to be heard on December 12, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons below, the Court hereby GRANTS in part and DENIES in part defendants' motions to dismiss.

**BACKGROUND**

The Court set forth a detailed factual background in a prior order in this case, and will therefore not repeat it here. *See* Dkt. No. 56 at 1-3. In brief, plaintiff is a Colombian-born medical doctor, specializing in surgical oncology. TAC ¶¶ 44-46. Following a complicated surgery that resulted in the death of a patient, plaintiff's surgical privileges were limited or suspended and plaintiff was subjected to peer review proceedings. *Id.* ¶¶ 51-115.

On September 20, 2013, plaintiff initiated this action, naming as defendants Good Samaritan Hospital LP, Samaritan LLC, Good Samaritan Hospital Medical Staff, an unincorporated association, and individuals Steven Schwartz and Bruce Wilbur (collectively, "GSH"), and GSH's parent company HCA, Inc. ("HCA"). On December 23, 2013, plaintiff

amended his complaint, alleging violations of 42 U.S.C. §§ 1981 and 1983. The Court granted defendants' motion to dismiss the amended complaint, but granted leave to amend the § 1981 claim. On April 16, 2014, plaintiff filed his second amended complaint ("SAC"). The Court granted defendants' motion to dismiss claims against defendant HCA with prejudice, but once again granted leave to amend the § 1981 claim. On August 6, 2014, plaintiff filed the third amended complaint ("TAC"). GSH now moves to dismiss the TAC for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as

2

prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id.* at 688-89. If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

GSH moves to dismiss the TAC, arguing that plaintiff has again failed to adequately allege that defendants intentionally discriminated against him based on his race, with regard to a statutorily enumerated activity, as required for a claim under § 1981.

To establish a discrimination claim under § 1981, a plaintiff must demonstrate that: (1) plaintiff is a member of a racial minority; (2) the defendant intentionally discriminated against the plaintiff on the basis of race; and (3) the discrimination concerned at least one statutorily enumerated activity, such as the making or enforcement of contracts. *See Ennix v. Stanten*, No. C 07-02486 WHA, 2007 WL 2462119, at *8 (N.D. Cal. Aug. 28, 2007). A plaintiff pursuing a § 1981 claim cannot rely upon disparate impact evidence to make his case; instead, he must allege that the defendants purposefully discriminated against him. *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389-91 (1982); *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 536 (9th Cir. 1982) ("[S]ection 1981 is limited to claims of intentional discrimination."). To successfully state a claim under § 1981, a plaintiff must establish that the defendant's intentional racial discrimination resulted in the impairment of, or prevented the creation of, a contractual relationship. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Importantly, "[s]ection 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

A plaintiff may establish intentional discrimination under § 1981 in two ways: he may allege facts that would support a finding of disparate treatment under Title VII, *see Gay*, 694 F.2d at 539, or he may allege facts that would support a finding of retaliation, *see CBOCS W., Inc. v.*

3

*Humphries*, 553 U.S. 442, 446 (2008).

## I. Disparate Treatment

To establish a prima facie case of disparate treatment, a plaintiff must allege facts demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position he sought or held; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated differently. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

Plaintiff largely realleges facts that this Court has previously found to be insufficient to support his claim of intentional discrimination under a disparate treatment theory. The adverse employment action plaintiff alleges is the suspension of his privileges and subsequent review process. Much like the SAC, the TAC is replete with allegations that white physicians were treated differently than plaintiff; yet he fails to support these bare allegations with sufficient facts to survive a motion to dismiss. Indeed, plaintiff points to only two situations in which white physicians performed surgeries resulting in their patients' deaths and were then not subject to revocation of their privileges or peer review action. *See* TAC ¶¶ 128-29. Plaintiff alleges that the surgery he performed was more complex and that his patient's pre-surgery condition was graver than those of the white physicians who were not sanctioned. *Id.* ¶129. Plaintiff further makes the conclusory assertion that he performed at a "higher standard" than his white colleagues who were not sanctioned. *Id.* However, plaintiff fails to allege facts supporting the conclusion that these two doctors were similarly situated to him; that is, that their treatment of their patients was of the type that might trigger privileging and peer review actions. Many, if not all, surgeons occasionally lose a patient. The mere allegation that these two doctors were among that less-than-exclusive group is insufficient to support a claim of intentional discrimination based on a disparate treatment theory.[1]

---

[1] The Court also notes that plaintiff continues to allege that stray remarks made by other doctors at the hospital support an inference of racial animus, as does GSH's treatment of other minority doctors. TAC ¶¶ 41, 91, 106, 116-18, 126. For the same reasons stated in the Court's two prior orders, these allegations are insufficient to demonstrate that defendants intentionally discriminated against plaintiff due to his race. *See* Dkt. No. 56 at 4-5; Dkt. No. 80 at 5 nt. 1.

4

Now in its fourth incarnation, plaintiff's complaint largely parrots allegations that the Court has previously found insufficient to state a claim for disparate treatment. Leave to amend should be granted "unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Here, the Court cannot find that a fifth bite at the apple would be any more fruitful than plaintiff's previous failed attempts. Accordingly, to the extent plaintiff's § 1981 claim is premised on disparate treatment, it is dismissed with prejudice.

## II. Retaliation.

To state a claim for retaliation under § 1981, a plaintiff must allege that: (1) he engaged in protected activity opposing an unlawful employment practice; (2) he suffered an adverse employment action; and (3) there was a causal link between the activity and the adverse employment action.[2] *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003); *see also Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 801 (9th Cir. 2003) (applying Title VII retaliation standard in § 1981 retaliation claim).

The Ninth Circuit defines adverse employment action "broadly," *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F.3d 840, 847 (9th Cir. 2004), as an act that "materially affect[s] the compensation, terms, conditions, or privileges" of employment. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008), *citing Chuang v. Board of Regents*, 225 F.3d 1115, 1125-26 (9th Cir. 2000). This includes acts such as "lateral transfers, unfavorable job references, and changes in work schedules." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). However, "the statute does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion." *Id.*, *citing Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991). Nonetheless, case law has put some limiting principles on this

---

[2] Plaintiff's TAC repeats a number of allegations that this Court has previously found to be insufficient to state a claim for retaliation for failure to meet the first prong of this test. Namely, plaintiff alleges that some of his patients received inadequate nursing care, that he protested the termination of a colleague, and that he filed a declaration supporting a conclusion of substandard nursing care. TAC ¶¶ 131, 134. For the reasons stated in the Court's previous order, these allegations fail to state a claim for retaliation. Docket No. 80 at 5-6.

otherwise expansive concept. In the retaliation context, the employer's act must be "reasonably likely to deter the [employee] from engaging in protected activity." *Ray* 217 F.3d at 1242-43. Furthermore, badmouthing an employee, or refusing to hold a job open for them is not considered an adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000). Additionally, actions that might otherwise be considered adverse will not state a claim for retaliation under § 1981 if they are subject to modification, or otherwise lack finality. *See Brooks* 229 F.3d at 930 ("Because the evaluation could well have been changed on appeal, it was not sufficiently final to constitute an adverse employment action.").

The third element, causation, may be inferred from the employer's "pattern of antagonism following the protected conduct," *Porter v. California Dep't of Corr*., 419 F.3d 885, 895 (9th Cir. 2005), as well as from the temporal proximity of the protected employment activity and the occurrence of the adverse employment act. *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) (causation can be inferred from "employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision."). However, "[i]f a plaintiff relies solely on the proximity in time inference to support the causation prong, that proximity in time must be very close." *Williams v. Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008); *see also Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that nine months between the complaint and adverse decision was too long to establish causation).

In response to this Court's two prior dismissals of plaintiff's complaint, plaintiff now alleges four instances of retaliation arising out of the filing and prosecution of this lawsuit. TAC ¶¶ 5, 12. The Court addresses each one in turn.

Plaintiff alleges that Dr. Wilbur stated that plaintiff should be removed from the Hypothermic Externally Applied Tumor ("HEAT") therapy trials because he and other staff members "had issues with [plaintiff] over this lawsuit." TAC ¶¶ 5(a), 146. While removal from the HEAT trials would certainly constitute an adverse employment action, plaintiff fails to allege that any action was actually taken. He alleges only that decision-makers at GSH said he "would be denied participation" in the trials, not that he actually was removed from the trials. *Id.* at 146.

Without more, these actions lack the requisite finality necessary to constitute an adverse employment action, and thus fail to state a claim. *See Brooks* 229 F.3d at 930; *cf. Ray* 217 F.3d at 1243 (§ 1981 "does not cover every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity.").[3]

Plaintiff also points to Dr. Lechleitner's refusal to confirm plaintiff's privileges for a thoracotomy, notifying him he would have to transfer his patient to another facility. TAC ¶¶ 5(c), 40, 146. However, much like plaintiff's allegations regarding the HEAT trials, he fails to allege that any final adverse action was actually taken. In fact, it appears from the TAC, that plaintiff was eventually allowed to perform the operation. *Id.* ¶ 5(c) ("unbiased medical staff had to intercede to prevent the patient's transfer."); *see also* Docket No. 87, Pl. Opp'n at 22 (stating only that the initial denial of privileges resulted in plaintiff "beginning the transfer of his patient from [GSH].""). This allegation therefore fails to state a claim for retaliation.

Plaintiff alleges that Dr. Schwartz failed to recuse himself from "consideration of a case in which PPEC sent a letter to [plaintiff] claiming post-operative delay in treating a patient with internal bleeding." TAC ¶¶ 5(b), 146. However, the TAC fails to explain why recusal was necessary or appropriate. Standing alone, receiving such a letter does not constitute an adverse employment action, and plaintiff provides no facts to show that receipt of this letter in any way affected the terms or conditions of his employment. *Morshed v. Cnty. of Lake*, No. 13-CV-521 YGR, 2014 WL 1725830, at *9 (N.D. Cal. May 1, 2014) (being "subject to internal affairs and

---

[3] In his opposition brief, plaintiff states his position more strongly, claiming that he "was removed from the oncology HEAT clinical trials although…such new therapies were his area of specialization." Pl. Opp'n at 22. As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Barbera v. WMC Mortgage Corp.*, C 04-3738 SBA, 2006 WL 167632, at *2 n. 4 (N.D. Cal. Jan. 19, 2006) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)); *see also Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1020 (N.D. Cal. 2011); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008), *aff'd*, 631 F.3d 1299 (9th Cir. 2011) ("Plaintiff's statements in his opposition brief cannot amend the Complaint under Rule 15."). If plaintiff's allegations, advanced for the first time in his opposition brief, effectively represent a *sub rosa* attempt to the amend the TAC, the Court will not consider this assertion for purposes of ruling on this motion. Plaintiff may, of course, prove such facts as he can at trial.

criminal investigations, standing alone, is not an adverse employment action.").

Plaintiff alleges that GSH agreed to institute a proctoring program for him so that he could regain privileges that were suspended as a result of the investigation of the incident that led to his patient's death; however, despite his many requests no such proctoring program has been set up. TAC ¶¶ 5(d), 15, 146. Failure to institute such a program is an adverse employment action, as it establishes a bar to plaintiff regaining significant privileges. It is therefore likely to deter a reasonable employee from engaging in protected conduct.

The Court also finds that plaintiff has alleged sufficient facts to establish causation. The Court agrees with plaintiff that the "protected activity" is not merely the filing of this action, but also includes the ongoing prosecution – which includes, among other things, amending the complaint on three separate occasions. Pl. Opp'n at 23-24. Plaintiff alleges that he requested proctoring in writing in April, May, and August of 2013 to no avail. TAC ¶¶ 5(d), 146.  It is clear that GSH's initial failure to respond to plaintiff's letters cannot be construed as retaliatory because they occurred before the commencement of this action in September of 2013. Defendants seize on this fact, arguing that "conditions that precede and continue after protected activities cannot, by their nature, be retaliatory in response to protected activities." Docket No. 89, Def. Rep. at 14.

The Court disagrees. Plaintiff has alleged that Dr. Schwartz (a defendant in this matter) stated at some time in 2014 that he and other staff members "had issues with [plaintiff] over this lawsuit," and that these "issues" were at least a partial justification for failure to set up the proctoring program. TAC ¶¶ 5(a), 12. Dr. Schwartz is the Chief of Staff at GSH and a member of the MEC, the body charged with implementing plaintiff's proctoring program. *Id.* ¶¶ 27, 31. It is therefore plausible that GSH's continued failure to provide such proctoring is an act of retaliation against plaintiff for maintaining this ongoing litigation. An action that was initially taken without retaliatory motive before the occurrence of the "protected" act may nevertheless be repeated in an attempt to retaliate.

The cases that defendants rely upon can be distinguished on the basis that they concern instances in which the plaintiff did not allege direct evidence of causation. *See Woods v. Bayer Healthcare*, 281 F. App'x 677, 678 (9th Cir. 2008); *Leramo v. Premier Anesthesia Med. Grp.*, 514

F. App'x 674, 676 (9th Cir. 2013). Here, plaintiff has alleged that in refusing to institute the proctoring program, decision-makers "specifically referenced their issues with Dr. Bastidas bringing this lawsuit." TAC ¶ 12; *see Johnson v. United Cont'l Holdings, Inc*., No. C-12-2730 MMC, 2013 WL 1758760, at \*5 (N.D. Cal. Apr. 24, 2013) (holding that statements made by corporate officers may suffice to allege causation if the officers in question "had a connection" to the adverse employment action). None of the cases cited by defendants support the contention that their present failure to provide proctoring to plaintiff is insulated from a claim of retaliation in perpetuity merely because it was, at one point, not motivated by retaliatory intent. Under defendants' reading of the case law, even statements which overtly convey an intent to retaliate after protected activity could not establish causation when the adverse employment action was initiated before the protected activity. Our employment discrimination laws do not countenance such brazen acts of reprisal. Accordingly, the Court denies defendants' motion to dismiss as to plaintiff's § 1981 claim of retaliation.

## CONCLUSION

The Court **GRANTS** defendants' motion as to plaintiff's § 1981 claim for disparate treatment, with prejudice; and **DENIES** defendants' motion as to plaintiff's § 1981 claim for retaliation. This order resolves Docket No. 84.

**IT IS SO ORDERED**.

Dated: December 8, 2014

SUSAN ILLSTON
United States District Judge