UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. AUGUSTO BASTIDAS,<br><br>   Plaintiff,<br><br>  v.<br><br>GOOD SAMARITAN HOSPITAL LP, et al.,<br><br>   Defendants. | Case No. 13-cv-04388-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 144 |

Now before the Court is defendants' motion to dismiss plaintiff's fourth amended complaint ("4AC"). This motion is scheduled to be heard on March 18, 2016. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing. For the reasons below, the Court GRANTS in part and DENIES in part defendants' motion to dismiss.

## BACKGROUND

The Court set forth a detailed factual background in a prior order in this case. *See* Dkt. No. 56 at 1-3.[1] In brief, plaintiff is a Colombian-born medical doctor, specializing in surgical oncology. 4AC ¶¶ 43-47. Following a complicated surgery at Good Samaritan Hospital that resulted in the death of a patient, plaintiff's surgical privileges were limited or suspended and plaintiff was subjected to peer review proceedings. *Id.* ¶¶ 56-90. The Board of Trustees of Good Samaritan Hospital issued its final report on plaintiff's case in January 2013, recommending that plaintiff be proctored for a number of surgeries prior to regaining his surgical privileges. *Id.* at ¶ 87.

---

[1] The page numbers cited reference the page numbers generated by ECF.

On September 20, 2013, plaintiff initiated this action, naming as defendants Good Samaritan Hospital LP, Samaritan LLC, Good Samaritan Hospital Medical Staff, an unincorporated association, and individuals Steven Schwartz and Bruce Wilbur (collectively, "GSH defendants"), and GSH's parent company HCA, Inc. ("HCA"). Dkt. 1. The complaint alleged that defendants discriminated against plaintiff on the basis of race, in violation of 42 U.S.C. § 1981, and denied him due process in privileging and peer review proceedings, in violation of 42 U.S.C. § 1983. *Id.* On December 2, 2013, defendants moved to dismiss the initial complaint. Dkt. 25. On December 23, 2013, plaintiff filed his first amended complaint ("FAC") alleging the same violations of law. Dkt. 39. On January 20, 2014, defendants moved to dismiss plaintiff's FAC pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. 43. The GSH defendants argued that plaintiff failed to allege that defendants intentionally discriminated against him on the basis of race or retaliated against him for engaging in a statutorily protected activity, under Section 1981, and that GSH was not a state actor under Section 1983. *Id.*

On March 13, 2014, this Court granted the GSH defendants' motion to dismiss in its entirety, *see* Dkt. 56, ruling that: (i) plaintiff had not met his burden of alleging that his suspension was racially motivated; and (ii) plaintiff had not met his burden of establishing that GSH, a private hospital, was a state actor. *Id.* at 6, 9. The Court granted plaintiff leave to re-plead his racial discrimination claim under Section 1981, but dismissed his due process claim under Section 1983 with prejudice. *Id.* at 10.

On April 16, 2014, plaintiff filed his second amended complaint ("SAC") pleading racial discrimination and, for the first time, retaliation under Section 1981. Dkt. 60. On May 12, 2014, defendants moved to dismiss the SAC pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. No. 63. The GSH defendants argued that the SAC failed to allege that defendants intentionally discriminated against plaintiff, and that several of the alleged incidents of discrimination did not involve adverse employment actions. *Id.* at 13-18. The GSH defendants also argued that plaintiff's claim of retaliation was inadequate because he failed to plead that he engaged in protected activities opposing unlawful employment practices. *Id.* at 19-20.

On July 7, 2014, this Court granted the GSH defendants' motion to dismiss the SAC,

without prejudice. Dkt. 80. (The Court dismissed defendant HCA from the case entirely). *Id.* at 6-8. The Court ruled that plaintiff failed to sufficiently allege facts supporting a claim of racial discrimination under either a disparate treatment theory or a retaliation theory. *Id*. at 4-5.

On August 6, 2014, plaintiff filed his third amended complaint ("TAC") alleging racial discrimination and retaliation under Section 1981. Dkt. 83. On September 10, 2014, defendants moved to dismiss the TAC pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. No. 84. Defendants argued that the TAC continued to make disparate treatment allegations that the Court had already held to be insufficient or irrelevant, and that the added allegations comparing plaintiff to other surgeons were insufficient to support an inference of disparate treatment. *Id.* at 15-19. Defendants also argued that plaintiff's claim of retaliation was inadequate because the incidents he alleged to support the claim lacked an adverse employment action, a causal link, or both. *Id.* at 19-25.

On December 8, 2014, this Court granted defendants' motion to dismiss the TAC as to the claim for disparate treatment, with prejudice, and dismissed three out of four claims for retaliation. Dkt. 93. But the Court denied the motion with respect to a single claim for retaliation based on the allegation that defendants failed to institute a proctoring program for plaintiff following the January 2013 final decision of the Board of Trustees, despite plaintiff's many requests. *Id.* at 8. Specifically, the order found that the failure to institute such a program was an adverse employment action, as it "establishe[d] a bar to plaintiff regaining significant privileges," and thus was "likely to deter a reasonable employee from engaging in protected conduct." *Id.* The Court also found that plaintiff had alleged sufficient facts to establish causation, because the protected activity necessarily "include[d] the ongoing prosecution [of the present matter] — which includes, among other things, amending the complaint on three separate occasions." *Id.* Defendants were therefore on notice that the Court considered the prosecution of this case to be a protected activity, and that any alleged retaliatory acts following the filing of this complaint having to do with a failure to timely institute a proctoring plan, or limiting Dr. Bastidas's surgical privileges, would be carefully scrutinized.

On August 31, 2015, defendants filed a motion for summary judgment, arguing that the

3

1  evidence showed that plaintiff did not suffer an adverse employment action and that there was no
2  evidence of a causal link between the lawsuit and defendants' failure to institute proctoring. Dkt.
3  118. Plaintiff opposed, arguing for the first time that defendants engaged in retaliatory conduct
4  when they failed to update the National Practitioner Data Bank (NPDB)[2] from October 2009
5  following the incident that resulted in the patient's death. *See* Dkt. 121-4 at 20-21 *as compared to*
6  Dkt. 83 at ¶ 78 (only mention in TAC). The NPDB report stated that the "Basis for Action or
7  Finding" was "INCOMPETENCE," that the action was a "SUMMARY OR EMERGENCY"
8  revoking of clinical privileges, and that the duration was "INDEFINITE." 4AC ¶ 91. The
9  hospital was initially required to file the report pursuant to 42 U.S.C. § 11133(a)(1), but it failed to
10 update it within 30 days following the completion of the peer review proceedings ending in
11 January 2013, as was its statutory duty pursuant to 45 C.F.R. § 60.5. 4AC ¶ 91-92. Defendants'
12 reply brief did not respond to the content of plaintiff's newest allegation, instead arguing that it
13 was not properly pled in plaintiff's TAC. Dkt. 127-4 at 6-8.

14 The Court ordered the parties to file supplemental briefs clarifying the proper causation
15 standard to be applied to assess the viability plaintiff's prima facie case. Dkt. 126. Plaintiff's
16 supplemental brief included additional allegations of retaliation following his filing of his
17 September 2013 complaint. Dkt. 137.

18 Since the Court had identified the September 2013 filing of the complaint in this case, as
19 well as the "ongoing prosecution [of the present matter] — which includes, among other things,
20 amending the complaint on three separate occasions," Dkt. 93 at 8, to be protected activities, the
21 Court found it prudent and in the interest of justice to permit plaintiff to once again amend his
22 complaint to include his remaining allegations of retaliation. Dkt. 138. The Court was mindful of
23 defendants' concern regarding receipt of sufficient notice of the content of plaintiff's complaint.
24 *Id.* Thus, the Court was careful to point out that it would not entertain any further allegations of

---

[2] The Court observes that the NPDB is an electronic information repository created by Congress that contains information on adverse actions related to health care practitioners, entities, providers, and suppliers. Federal law specifies the types of actions reported to the NPDB, and organizations must be authorized to submit reports and/or query the NPDB. Organizations authorized to access these reports use them to make licensing, credentialing, privileging, or employment decisions. *See* National Practitioner Data Bank, http://www.npdb.hrsa.gov/ (last visited Mar. 9, 2016).

1 retaliation from plaintiff following the filing of its November 16, 2015 order permitting the
2 amendment, and that plaintiff would not be granted further leave to amend his complaint. *Id.* The
3 then-pending summary judgment motion was dismissed as moot. *Id.*

4 Plaintiff has now filed his 4AC. Dkt. 140. The Court finds that two of plaintiff's
5 allegations plead sufficient facts to sustain a cause of action for retaliation.

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id.* at 688-89. If the Court dismisses a complaint, it must decide whether to grant leave

United States District Court
Northern District of California

1  to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

Defendants move to dismiss the 4AC, arguing that this Court has already held that three of plaintiff's alleged actions are inadequate. Defendants assert that all of the actions alleged are "missing an adverse employment action, a causal link between the adverse action and the protected activity, or both." Dkt. 144 at 17.

To state a claim for retaliation under § 1981, a plaintiff must allege that: (1) he engaged in protected activity opposing an unlawful employment practice; (2) he suffered an adverse employment action; and (3) there was a causal link between the activity and the adverse employment action. *See Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003); *see also Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 801 (9th Cir. 2003) (applying Title VII retaliation standard in § 1981 retaliation claim).

The Ninth Circuit defines an adverse employment action "broadly," *Fonseca v. Sysco Food Servs. of Ariz. Inc.*, 374 F.3d 840, 847 (9th Cir. 2004), as an act that "materially affect[s] the compensation, terms, conditions, or privileges" of employment. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008), *citing Chuang v. Board of Regents*, 225 F.3d 1115, 1125-26 (9th Cir. 2000). This includes acts such as "lateral transfers, unfavorable job references, and changes in work schedules." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). However, "the statute does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion." *Id.*, *citing Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991). Nonetheless, case law has put some limiting principles on this otherwise expansive concept. In the retaliation context, the employer's act must be "reasonably likely to deter the [employee] from engaging in protected activity." *Ray* 217 F.3d at 1242-43. Furthermore, "badmouthing" an employee, or refusing to hold a job open for an employee, is not

1  considered an adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th
2  Cir. 2000). Additionally, actions that might otherwise be considered adverse will not state a claim
3  for retaliation under § 1981 if they are subject to modification, or otherwise lack finality. *See*
4  *Brooks* 229 F.3d at 930 ("Because the evaluation could well have been changed on appeal, it was
5  not sufficiently final to constitute an adverse employment action.").

6  The third element, causation, may be inferred from the employer's "pattern of antagonism
7  following the protected conduct," *Porter v. California Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir.
8  2005), as well as from the temporal proximity of the protected employment activity and the
9  occurrence of the adverse employment act. *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir.
10  1987) (causation can be inferred from "employer's knowledge that the plaintiff engaged in
11  protected activities and the proximity in time between the protected action and the allegedly
12  retaliatory employment decision."). However, "[i]f a plaintiff relies solely on the proximity in
13  time inference to support the causation prong, that proximity in time must be very close."
14  *Williams v. Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008); *see also Manatt v.*
15  *Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (holding that nine months between the
16  complaint and adverse decision was too long to establish causation).

17  Recently, the United States Supreme Court adopted a but-for causation standard to Title
18  VII retaliation claims; that is, the plaintiff must show that his or her protected activity was a but-
19  for cause of the alleged adverse action by the employer. *Univ. of Texas Sw. Med. Ctr. v. Nassar*,
20  133 S. Ct. 2517, 2534 (2013). The Ninth Circuit has extended this standard to ADA retaliation
21  claims, while our sister circuits have extended this standard to Section 1981 claims. *See T.B. ex*
22  *rel. Brenneise v. San Diego Unified Sch. Dist.*, 795 F.3d 1067, 1088 (9th Cir. 2015); *see also*
23  *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2015); *Skylarsky v.*
24  *Means-Knaus Partners, L.P.*, 777 F.3d 892, 894-95, 898 (7th Cir. 2015); *Davis v. Unified Sch.*
25  *Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014); *Smith v. City of Fort Pierce, Fla.*, 565 F. App'x
26  774, 776, 778 (11th Cir. 2014); *Sarkis v. Ollie's Bargain Outlet*, 560 F. App'x 27, 29 n.1, 30 (2d
27  Cir. 2014); *Blakney v. City of Philadelphia*, 559 F. App'x 183, 185−87 (3d Cir. 2014); *Wright v.*
28  *St. Vincent Health Sys.*, 730 F.3d 732, 738 n.5 (8th Cir. 2013). The Ninth Circuit has yet to

explicitly extend this standard to Section 1981 claims.

Here, plaintiff again alleges three adverse actions that this Court has already dismissed with prejudice: (1) the claim that Dr. Wilbur stated that plaintiff should be removed from the Hypothermic Externally Applied Tumor ("HEAT") therapy trials because he and other staff members "had issues with [plaintiff] over this lawsuit," TAC ¶¶ 5(a), 146, *compared to* 4AC ¶ 4(e)(1); (2) the claim that Dr. Lechleitner's refused to confirm plaintiff's privileges for a thoracotomy, notifying plaintiff that he would have to transfer his patient to another facility, TAC ¶¶ 5(c), 40, 146, *compared to* 4AC ¶¶ 4(e)(ii), 40; and (3) the claim that Dr. Schwartz failed to recuse himself from "consideration of a case in which PPEC sent a letter to [plaintiff] claiming post-operative delay in treating a patient with internal bleeding." TAC ¶¶ 5(b), 146, *compared to* 4AC ¶ 112. Plaintiff is precluded from re-alleging these claims in the present complaint. *See In re Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999) (reasoning that claims dismissed with prejudice are precluded from being re-alleged by the same parties pursuant to res judicata). Defendants' motion seeking dismissal of these causes of action on res judicata grounds is GRANTED.

Plaintiff responds that, notwithstanding the above allegations, he has adequately pled four separate instances of retaliation by defendants. Dkt. 149. Each of these will be discussed in turn.

### 1. Failure to Update National Practitioner Data Bank

Plaintiff's 4AC now incorporates the claim regarding defendants' failure to update the NPDB, which was first made in plaintiff's brief in opposition to defendants" summary judgment motion. The 4AC alleges that defendants' engaged in retaliatory conduct when they failed to update the NPDB from October 2009 following the incident that resulted in the patient's death. 4AC ¶ 92. As previously discussed, the NPDB report stated that the "Basis for Action or Finding" was "INCOMPETENCE," that the action was a "SUMMARY OR EMERGENCY" revoking of clinical privileges, and that the duration was "INDEFINITE." *Id.* at ¶ 91. The hospital was initially required to file the report pursuant to 42 U.S.C. § 11133(a)(1), but it failed to update it within 30 days following the completion of the peer review proceedings ending in January 2013, as was its statutory duty pursuant to 45 C.F.R. § 60.5. 4AC ¶¶ 91-92. The complaint alleges that,

"as of the filing of this lawsuit on September 20, 2013, Dr. Bastidas had put defendants on notice of their obligation to file an update to the NPDB report." *Id.* The complaint goes on to recount how plaintiff wrote a letter in May 2013 concerning the hospital's duty to update the report. *Id.* at ¶ 93. The complaint alleges that plaintiff did not hear back from the hospital until Dr. Blumenthal wrote to him in August 2015, stating that the hospital would "file the NPDB report this week" and that the language would reflect that plaintiff's privileges had been reinstated after the "peer review hearing and final Hospital Board decision of January 2013." *Id.* at ¶ 95. The complaint asserts that as of November 2015, defendants have still not filed the NPDB amendment. *Id.* at ¶ 96.

Defendants argue that their failure to update the NPDB report cannot be considered an adverse employment action because the NPDB report was subject to modification, and thus lacked the requisite finality to constitute an adverse employment action. Dkt. 150 at 8.

However, plaintiff's point is that the report could -- and should -- have been modified but was not, for retaliatory reasons. The protracted failure to update a physician's online professional profile that announces him "incompetent" on an "indefinite" basis is not akin to an employment evaluation that can be modified or a temporary job transfer. *See Brooks v. City of San Mateo*, 229 F.3d 917, 929-30 (9th Cir. 2000) (finding that an employee's employment evaluation was not an adverse employment action because it was subject to modification by the employer); *Foster v. State*, 23 F. App'x 731, 734 (9th Cir. 2001) (finding that temporary job reassignment was not an adverse employment action). The profile status presumably affects licensing and professional privileges until such time as it is remedied. The fact that it can be modified does not ameliorate the present and lasting damage it causes to a professional's reputation and career. The complaint states a plausible basis upon which to find an adverse employment action.

Defendants also assert that there is no causal link between their failure to update the report and plaintiff's filing of this lawsuit, because their alleged omission preceded the filing of this lawsuit by approximately eight months, and thus could not have been caused by it. Dkt. 144 at 24. The Court finds that, while this is a closer issue, causation is a totality of the circumstances consideration, and may be inferred from the employer's "pattern of antagonism following the protected conduct," *Porter*, 419 F.3d at 895, as well as from the temporal proximity of the

1  protected activity and the occurrence of the adverse act, where the employer has knowledge of the
2  protected activity. *Yartzoff*, 809 F.2d at 1376. Here, plaintiff is not simply relying on temporal
3  proximity to support an inference of causation; he alleges a series of adverse acts of intentional
4  inaction on the part of the defendants' related to his licensing and surgical privileges following the
5  filing of this complaint, including defendants' failure to provide him with a proctoring plan to
6  restore his surgical privileges, which will be discussed in further detail below. It is plausible on
7  the face of the complaint that the prolonged failure of defendants to remedy plaintiff's professional
8  standing was caused by his filing and continued prosecution of this September 2013 lawsuit; it is
9  undisputed that defendants had knowledge of these proceedings and that defendants have failed to
10 move forward on this and other professional licensing issues. *Cf. Coszalter v. City of Salem*, 320
11 F.3d 968, 978 (9th Cir. 2003) ("We therefore reject any bright-line rule about the timing of
12 retaliation. There is no set time beyond which acts cannot support an inference of retaliation, and
13 there is no set time within which acts necessarily support an inference of retaliation. Whether an
14 adverse employment action is intended to be retaliatory is a question of fact that must be decided
15 in the light of the timing and the surrounding circumstances.").

16 This allegation is plausibly pled. The Court therefore DENIES defendants' motion seeking
17 dismissal on these grounds.

### 2. Continuing Delays in Allowing Plaintiff to Satisfy Proctoring Requirements

20 Plaintiff again alleges that defendants agreed to institute a proctoring program for him so
21 that he could regain surgical privileges that were suspended as a result of the investigation of the
22 incident that led to his patient's death, but that, despite his many requests, no such proctoring
23 program has been set up. 4AC ¶¶ 104-109. Failure to institute such a program is an adverse
24 employment action, as it establishes a bar to plaintiff regaining significant privileges. It is
25 therefore likely to deter a reasonable employee from engaging in protected conduct.

26 Defendants challenge this allegation on causation grounds. Defendants essentially argue
27 that plaintiff's proctoring was "already delayed" when he filed the present lawsuit, Dkt. 114 at 20,
28 and that plaintiff's complaint fails to proffer facts that would link his filing of the present lawsuit

with defendants' continued failure to establish the plan. *Id.*

The Court finds that plaintiff has alleged sufficient facts to establish causation. The "protected activity" is not merely the filing of this action, but also includes the ongoing prosecution — which now includes, among other things, noticing depositions and amending his complaint on four separate occasions.

Plaintiff alleges that he requested proctoring in writing in April, May, and August of 2013 to no avail. 4AC ¶¶ 4(d). It is clear that GSH's initial failure to respond to plaintiff's letters cannot be construed as retaliatory because they occurred before the commencement of this action in September of 2013. But following the filing of this lawsuit, plaintiff alleges that defendants refused to communicate with him on this topic in any capacity until his counsel noticed depositions for June 2, 2015, which notice advised defendants that they would be asked to provide explanation for their lack of response to plaintiff's requests for a proctoring plan. *Id.* at ¶ 105. The complaint alleges that that on June 4, 2015, Dr. Beaupre, CEO of GSH, refused to speak to plaintiff because of the allegations in this lawsuit of disparate racial treatment and that Dr. Beaupre "kicked Dr. Bastidas out of his office." *Id.* at ¶ 106. The only defendant to respond to plaintiff was Dr. Blumenfeld, who called plaintiff on June 9, 2015, to inform him that the Medical Executive Committee was working on a proctoring plan and that the Committee would meet with plaintiff to discuss this and the NPDB report. *Id.* at ¶ 107. Plaintiff signed a proctoring plan on August 26, 2015. The complaint alleges, "Notwithstanding all of this, the [proctoring plan] has still not been implemented." The complaint further alleges that plaintiff sent defendants multiple emails asking for an update on the proctoring plan so that he could schedule cases to be proctored: on September 6, September 30, October 1, and October 8, 2015. To date, the last email that plaintiff sent on November 7, 2015 has not been answered. *Id.* at ¶ 108-109.

Causation may be inferred from the employer's "pattern of antagonism following the protected conduct," *Porter*, 419 F.3d at 895, as well as from the temporal proximity of the protected activity and the occurrence of the adverse act, where the employer has knowledge of the protected activity. *Yartzoff*, 809 F.2d at 1376. It is undisputed that defendants had knowledge of plaintiff's having filed this lawsuit, as well as the subsequent depositions plaintiff noticed in June

2015. And while "retaliation is, by definition, an intentional act," *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (2005), an intentional, protracted failure to communicate information to an employee that would allow him to ameliorate or regain his professional standing could be construed — based on other instances of adverse behavior to plaintiff's regaining his surgical privileges — as a pattern of antagonism sufficient to sustain a cause of action pursuant to § 1981, at least at the pleadings stage. None of the cases cited by defendants support the contention that their present failure to provide proctoring to plaintiff is insulated from a claim of retaliation in perpetuity merely because it was, at one point, not motivated by retaliatory intent. Accordingly, the Court DENIES defendants' motion to dismiss this allegation.

### 3. Disqualification of Plaintiff from Chief of Surgery Election

Plaintiff alleges that after the filing of this lawsuit in September 2013, despite the fact that his privileging issues were resolved in January 2013 by the Board of Trustees' order for proctoring, defendants prevented plaintiff from running for Chair of the Division of Surgery by removing his name from the ballot. 4AC at ¶ 98. Plaintiff alleges that he was notified in October 2015 that because of his 2009 summary suspension (which had not disqualified him from office in 2012 and 2013), he was not in "good standing" with the Medical Staff and did not qualify for election to any office. According to plaintiff, defendants recalled all of the ballots for Chair of the Division of Surgery with his name on them. *Id.* Plaintiff challenged this decision over email. *Id.* at ¶ 99. On November 16, 2015 — the cutoff day of this Court's order as to what plaintiff could plead as retaliatory conduct — defendants informed plaintiff that a revised election process would take place, and that his name would be added. *Id.* at ¶ 100.

The Court agrees with defendants that plaintiff has not pled facts that constitute an adverse employment action. As evidenced on the face of the complaint, the actions taken by defendants lacked finality, and were ultimately modified in plaintiff's favor. *See Brooks*, 229 F.3d at 929-30 (finding that an employee's employment evaluation was not an adverse employment action because it was subject to modification by the employer); *Foster*, 23 F. App'x at 734 (finding that temporary job reassignment was not an adverse employment action). The Court finds that

amendment would be futile at this stage, and GRANTS defendants' motion to dismiss this allegation, with prejudice.

### 4. Removal of Plaintiff as Chair of Cancer Care Committee

Plaintiff's complaint alleges that at a November 13, 2015 meeting the Medical Executive Committee of the hospital voted to terminate his membership in the Cancer Care Committee. The complaint alleges that plaintiff has been on the Cancer Care Committee at GSH since 2006, and had been the chair since 2009. 4AC at ¶ 101-102.

The Court agrees with defendants that plaintiff has failed to plead facts that demonstrate an adverse employment action, *i.e.*, how his removal from the Cancer Care Committee would be reasonably likely to deter employees from engaging in the protected activity (in this case, the filing of a 2013 lawsuit). *See Ray*, 217 F.3d at 1237, 1244. The Court finds that amendment would be futile at this stage, and GRANTS defendants' motion to dismiss this allegation, with prejudice.

///

///

13

**CONCLUSION**

The Court **GRANTS** defendants' motion to dismiss plaintiff's § 1981 retaliation claim based on his allegations that: (1) Dr. Wilbur stated that he had issues with plaintiff and that plaintiff should be removed from the HEAT therapy trials (4AC ¶ 4(e)(i)); (2) Dr. Lechleitner refused to confirm plaintiff's privileges for a thoracotomy (4AC ¶¶ 4(e)(ii)); (3) Dr. Schwartz failed to recuse himself from a case (4AC ¶ 112); (4) he was disqualified from the election for Chief of Surgery; and (5) he was removed from the Cancer Care Committee.

The Court **DENIES** defendants' motion to dismiss plaintiff's § 1981 retaliation claim based on to his allegations that: (1) defendants have failed to update the National Practitioner Data Bank since 2009 — so that he remains "incompetent" on an "indefinite" basis in the eyes of anyone with access to the database; and (2) defendants have failed to institute a proctoring plan for him to regain his surgical privileges, despite the final decision of the Board of Trustees in 2013 restoring them by proctoring.

Defendants' answer shall be filed on or before March 25, 2016.

**IT IS SO ORDERED**.

Dated: March 15, 2016

SUSAN ILLSTON
United States District Judge