UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. AUGUSTO BASTIDAS,<br><br>  Plaintiff,<br><br>  v.<br><br>GOOD SAMARITAN HOSPITAL LP, et al.,<br><br>  Defendants. | Case No. 13-cv-04388-SI<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 176 |

This dispute arises out of a medical peer review following defendant Good Samaritan Hospital's suspension of plaintiff's surgical privileges. Plaintiff initially filed this suit alleging discrimination and disparate treatment based on race. After substantial motion practice and four amended complaints, plaintiff now alleges two claims of retaliation under 42 U.S.C. § 1981. Plaintiff claims that defendants retaliated against him for filing and prosecuting this lawsuit by: (1) unreasonably and intentionally delaying with finalizing and implementing plaintiff's surgical proctoring program; and (2) unreasonably and intentionally delaying an update to the National Practitioner Data Bank with details of plaintiff's limited suspension.

On November 4, 2016, the Court held a hearing on defendants' motion for summary judgment. After careful consideration of the papers submitted, for the reasons articulated in open court, the Court finds that there are genuine disputes of material fact as to plaintiff's retaliation claims against the hospital defendants. The Court further finds that the record contains no evidence of retaliatory acts by the individual defendants, Dr. Wilbur and Dr. Schwartz. The Court hereby DENIES defendants' motion as to the hospital entities and GRANTS the motion as to the individual defendants.

**BACKGROUND**

Plaintiff is a Colombian-born general surgeon sub-specializing in oncology surgery and advanced cancer treatments at Good Samaritan Hospital ("GSH"). Plaintiff began working at GSH in 2004. In 2009, plaintiff lost a patient shortly after performing a complicated surgical procedure, known as a "Whipple." GSH immediately suspended plaintiff's surgical privileges, which prompted GSH's filing of an "Adverse Action Report" with the National Practitioner Data Bank ("NPDB") explaining plaintiff's "indefinite," "summary or emergency" suspension. Decl. Bastidas, Ex. C, NPDB report (Dkt. No. 185-6). Plaintiff's suspension began a years-long peer review and administrative appeal process, finally completed in early 2013 when the GSH Board of Trustees issued its final decision. *See* Decl. Wong, Ex. 7, Board final action (Dkt. No. 174-4).

Pursuant to the Board's final decision, the GSH Medical Executive Committee ("MEC") presented plaintiff with a Focused Professional Practice Evaluation ("FPPE"), a surgical proctoring program through which plaintiff could eventually regain his full surgical privileges at GSH. Roughly two months later, on August 1, 2013, plaintiff responded by letter, stating his belief that the FPPE was more restrictive than required by the final Board decision. *Id.*, Ex. 12, letter from plaintiff to Tilles (Dkt. No. 174-8). Plaintiff asked the GSH Chief of Staff to "review this issue and clarify" and stated that he was "happy to meet . . . to finalize a FPPE." *Id.* At this point, neither party progressed the issue for well over a year.

Plaintiff filed this lawsuit on September 20, 2013. Dkt. No. 1. On December 16, 2014, for the first time since filing the lawsuit, plaintiff renewed his requests for a revised FPPE and update to the NPDB. Decl. Bastidas ¶ 91, Ex. L, plaintiff email to GSH staff (Dkt. No. 186-8). Plaintiff stated that the GSH Medical Staff had "yet to respond to [his] request to initiate [his] FPPE." *Id.* Plaintiff requested a status update on the FPPE process and asked GSH to "submit an appropriate amendment ASAP" to the NPDB since he "remain[ed] listed as an 'incompetent' physician . . . and that item continue[d] to prevent [him] from obtaining privileges at any new institutions." *Id.* Having heard nothing, plaintiff followed up again on April 28, 2015 by certified letter to Dr. Blumenfeld, now acting as GSH Chief of Staff, and reiterated the same concerns about the FPPE and NPDB. Decl. Wong, Ex. 17, plaintiff letter to Blumenfeld (Dkt. No. 175-1). Again, plaintiff

2

received no response.

Plaintiff noticed the depositions of the GSH Medical Staff on June 2, 2015, including as topics, "actions taken by the [MEC] with regard to the proctoring of Plaintiff," actions taken in response to plaintiff's August 1, 2013 letter objecting to the FPPE and his follow-up communications on December 16, 2014 and April 28, 2015, and actions related to updating the NPDB. Decl. Bastidas ¶ 94. One week later, Dr. Blumenfeld, GSH Chief of Staff, called plaintiff to let him know that the MEC was working on a proposed FPPE and that the two should meet to discuss NPDB reporting. *See* Decl. Bastidas ¶ 95 & Ex. N, email from plaintiff to Blumenfeld memorializing conversation (Dkt. No. 186-12). Over several weeks following the phone conversation, plaintiff and defendants exchanged letters and emails, eventually leading to an agreed FPPE. Decl. Bastidas ¶ 97; *see also* Decl. Wong, Exs. 19-21. Plaintiff signed the FPPE on August 26, 2015, which appointed Dr. Harris from UCSF as his proctor and included optional intra-operative observation at the election of the Chief of Staff. Decl. Wong, Ex. 28 (Dkt. No. 175-10).

Around the time that the parties executed plaintiff's FPPE, discussions also progressed regarding the NPDB update. On August 24, 2015, Dr. Blumenfeld sent plaintiff a letter about plaintiff's requested NPDB updates. Decl. Bastidas ¶ 99 & Ex. O, letter from Blumenfeld to plaintiff (Dkt. No. 186-14). The letter set forth agreed-upon language for an NPDB revision, describing plaintiff's suspension and proctoring program, and stated that the NPDB update would be filed the same week. *Id.* By the end of August 2015, the parties had signed plaintiff's proctoring program and agreed to the content of the NPDB revision. Despite the apparent agreement, the parties did not finalize either for several more months.

Mary Ann Rodriguez, now GSH's Director of Medical Staff Services, states that between late August and mid-December of 2015, she did not realize that filing the NPDB update was her responsibility. Decl. Rodriguez (Dkt. No. 173-6) ¶¶ 7-8.[1] Rodriguez states that she could not find

---

[1] Plaintiff objects to certain portions of the Rodriguez Declaration, claiming the information is either inadmissible hearsay or that the declarant lacks personal knowledge with respect to certain statements. *See* Dkt. No. 193. This order need not address these objections because, even taking this evidence into account, defendants' motion will be denied. Accordingly,

3

log-in credentials for the data bank, so she called the NPDB and waited "a couple of weeks" for her log-in information. *Id.* ¶ 10. She then tried to submit the report, but the submission required a payment and she did not have access to a hospital credit card. *Id.* ¶¶ 11-12. Rodriguez filed plaintiff's "Revision to Action Report" with the NPDB on January 28, 2016, approximately five months after Dr. Blumenfeld told plaintiff it would be filed. *Id.* ¶ 12; Wong Decl., Ex. 35, Revision to Action Report (Dkt. No. 177-6).

After reaching an agreed FPPE in August 2015, the parties continued to experience delays with the implementation of plaintiff's proctoring. Over the next several months, plaintiff followed up with GSH administration regularly about submitting cases to his proctor. Plaintiff wrote directly to the Board on December 14, 2015 requesting a status update, stating that he had been waiting to have Dr. Harris review certain patients that plaintiff wanted to schedule for surgery. Decl. Bastidas, Ex. P, letter to Board (Dkt. No. 186-16).

While plaintiff sought to have his proctoring program fully implemented, plaintiff ran for election as Chair of GSH's Department of Surgery. On October 27, 2015, the MEC wrote plaintiff and informed him that because of the practice restrictions in place under plaintiff's suspension, plaintiff was not in "good standing" and therefore ineligible to run for Chair of Surgery under the Medical Staff Bylaws. Decl. Bastidas ¶ 122 & Ex. S, letter from Chief of Staff to plaintiff (Dkt. No. 187-4) at 1. The MEC removed plaintiff from the ballot. Plaintiff disputed the MEC's interpretation of the Bylaws. Decl. Bastidas ¶ 123; *id.*, Ex. S, email from plaintiff to MEC members (Dkt. No. 187-4) at 2. On November 16, 2015, the MEC responded to plaintiff by letter. Decl. Bastidas ¶ 124 & Ex. T, letter from MEC to plaintiff (Dkt. No. 187-6). The MEC stated that after meeting on the issue, it had determined that the Bylaws were not clear about plaintiff's eligibility to run and that because of the ambiguity, it would send out new ballots including plaintiff's name. *Id.* The MEC noted, however, that in the course of reviewing the Bylaws, it had determined that members of medical staff committees must be in good standing, and that accordingly, plaintiff could no longer serve on the hospital's Cancer Care Committee. *Id.* After

---

plaintiff's objections to this declaration are OVERRULED.

4

the MEC added plaintiff's name to the new Chair of Surgery ballot, plaintiff's voting peers elected him as Chair. Decl. Bastidas ¶¶ 125-26, *id.* Exs. U, V, memo and new ballot for election, letter from MEC to plaintiff (Dkt. Nos. 187-8, 187-10). On December 21, 2015, the MEC wrote plaintiff again to explain that under the Bylaws, election results are subject to ratification by the MEC. Decl. Bastidas ¶ 127 & Ex. V, letter from MEC to plaintiff (Dkt. No. 187-10). The MEC stated that ratification required a majority vote and, after discussing the election in a closed session, plaintiff's election had narrowly fallen short of ratification; plaintiff "therefore [could not] serve in that position." *Id.*

Before, during, and after the election proceedings, GSH claims to have experienced significant delays in getting Dr. Harris, a UCSF doctor, the necessary temporary privileges to act as plaintiff's proctor at GSH. *See* Decl. Abrams (Dkt. No. 173-5) ¶¶ 7-12.[2] GSH, UCSF, and Dr. Harris needed to negotiate and agree to a professional services contract for Dr. Harris's proctoring arrangement. *See id.* ¶¶ 8-9. Gregory Abrams, who oversaw this process, describes that it dragged out over many months from late 2015 to mid-2016, and involved extensive coordination between GSH, UCSF, GSH's parent company, the hospital's credentialing arm, and others. *See id.* ¶¶ 7-25; *see also* Supp. Decl. Wong, Ex. 60, excerpts from Hinsdale deposition (Dkt. 196-10) at 26. Plaintiff states that he has only been able to submit cases to Dr. Harris for review since late July 2016. Decl. Bastidas (Dkt. No. 184-6) ¶ 115.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however,

---

[2] Plaintiff objects to the admissibility of the Abrams Declaration in whole and in part. Dkt. No. 184-8. This order need not address these objections because, even taking this evidence into account, defendants' motion will be denied. Accordingly, plaintiff's objections to this declaration are OVERRULED.

1  has no burden to disprove matters on which the nonmoving party will have the burden of proof at
2  trial. *Id.* at 325. The moving party need only demonstrate to the Court that there is an absence of
3  evidence to support the non-moving party's case. *Id.*

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

The Supreme Court has interpreted 42 U.S.C. § 1981 to encompass retaliation claims, even though section 1981 does not include an express retaliation provision. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). A plaintiff alleging retaliation under section 1981 may either proceed by producing direct or circumstantial evidence showing that a discriminatory reason more likely than not motivated the employer, or may apply the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). Here, both parties apply the *McDonnell Douglas* framework. *See* Mot. (Dkt. No. 176) at 9; Opp'n (Dkt. No. 184) at 17.

The *McDonnell Douglas* framework utilizes a three-step analysis. The first step requires

6

the plaintiff to demonstrate a *prima facie* case of retaliation. *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001) (citation omitted). If the plaintiff succeeds, he has established a rebuttable presumption of retaliation. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "The burden of production, but not persuasion," then shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its adverse action against the plaintiff. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010) (citations and internal quotation marks omitted); *see also Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citation omitted). If the defendant puts forth a legitimate reason, the presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The final burden then rests with the plaintiff to prove that the defendant's proffered explanation is merely a pretext for retaliation. *Bergene*, 272 F.3d at 1140-41 (citation omitted); *Ray*, 217 F.3d at 1240 (citation omitted).

As a general matter, the plaintiff in an employment discrimination action "need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because 'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

For the reasons set forth below, and for the reasons stated in open court, the Court GRANTS defendants' motion as to Dr. Schwartz and Dr. Wilbur, and DENIES defendants' motion as to the remaining defendants.

## I. Prima Facie Case

In order to establish a *prima facie* case on summary judgment, "[t]he plaintiff need only offer evidence which gives rise to an inference of unlawful discrimination." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)); *see id.* (noting that the degree of proof necessary on summary judgment is "minimal"). To make out a *prima facie* case of retaliation under the *McDonnell Douglas* framework, an employee

7

1  must show: (1) that he engaged in a protected activity; (2) that his employer subjected him to an
2  adverse employment action; and (3) that a causal link exists between the protected activity and the
3  adverse action. *Ray*, 217 F.3d at 1240.[3] The parties do not dispute that plaintiff meets the first
4  requirement of his *prima facie* case: plaintiff engaged in a protected activity by filing and
5  prosecuting this discrimination lawsuit. Dkt. 1; Dkt. 39; Dkt. 60; Dkt. 83; Dkt. 140; Dkt. No. 176
6  at 9; Dkt. 190 at 18. The parties' arguments center on the second and third elements of plaintiff's
7  *prima facie* case: whether defendants subjected plaintiff to an adverse employment action, and
8  whether there is a causal link between plaintiff's prosecution of this lawsuit and the alleged
9  adverse employment actions.

### A. Adverse Employment Action

Plaintiff alleges that defendants subjected him to two adverse employment actions in this case, by: (1) failing to timely implement a surgical proctoring program for the plaintiff; and (2) failing to timely file an update to the National Practitioner Data Bank regarding plaintiff's suspension of privileges. The Ninth Circuit defines "adverse employment action" broadly. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004) (citations omitted). Any action "reasonably likely to deter employees from engaging in protected activity" can be considered an adverse employment action. *Ray*, 217 F.3d at 1243. An adverse action may include a reduction in compensation, a warning letter or negative review or a limitation of the terms or privileges of employment. *Fonseca*, 374 F.3d at 847; *Chuang*, 225 F.3d at 1125-26.

A jury could reasonably find that the two adverse employment actions alleged here, failure to timely implement plaintiff's proctoring program and failure to timely update the NPDB with plaintiff's disciplinary status, would be reasonably likely to deter an employee from engaging in protected activity. At minimum, the record demonstrates that successful implementation of an approved proctoring program directly affected plaintiff's privileges to perform certain types of

---

[3] While *Ray* addressed retaliation claims under Title VII, courts analyze section 1981 retaliation claims under the same framework. *See Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004).

8

surgeries at GSH, surgeries that previously had formed a significant part of plaintiff's medical practice at the hospital. Any delay in implementation served to prevent plaintiff from regaining full surgical privileges. Moreover, the record contains sufficient evidence demonstrating a genuine dispute of material fact as to whether defendants' failure to update the NPDB report materially affected the terms, conditions, or privileges of plaintiff's employment, or otherwise would be reasonably likely to deter an employee from engaging in protected activity. The report on file, without revision until January 2016, stated that plaintiff had been suspended for incompetence. The report was visible to other hospitals at which plaintiff may have sought surgical privileges.

### B. Causal Connection

To establish causation in this Circuit, a plaintiff may offer direct evidence of causation, or circumstantial evidence from which causation can be inferred, such as an employer's "pattern of antagonism following the protected conduct," *Porter v. Cal. Dep't Corr.*, 419 F.3d 885, 895 (9th Cir. 2005), or temporal proximity between the protected activity and the occurrence of the adverse action. *Pardi v. Kaiser Found. Hosp.*, 389 F.3d 840, 850 (9th Cir. 2004); *Bell v. Clackamas Cnty.*, 341 F.3d 858, 865-66 (9th Cir. 2003); *Yartzoff*, 809 F.2d at 1376. In cases that rely solely on the existence of temporal proximity, however, our Circuit has cautioned that a "specified time period cannot be a mechanically applied criterion. A rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." *Porter*, 419 F.3d at 895 (citation and internal quotation marks omitted).

Defendants separately urge the Court to apply the heightened "but-for" causation standard employed in Title VII cases to this action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013). Defendants admit that the Ninth Circuit has not explicitly extended *Nassar* to section 1981 claims, but argue that the Ninth Circuit is "headed in that direction."[4] Mot. (Dkt. No.

---

[4] The Ninth Circuit has consistently held that "[r]etaliation claims under Title VII and § 1981 share identical legal standards." *Williams v. Tucson Unified Sch. Dist.*, 316 F. App'x 563, 564 (9th Cir. 2008) (citing *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003) (recognizing that "those legal principles guiding a court in a Title VII dispute apply with equal

9

176) at 14 n.6 (citing *Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 800 (2016) (unpublished memorandum opinion)). Under this standard, a plaintiff must prove that "his or her protected activity was a but-for cause of the alleged adverse action by the employer." 133 S.Ct. at 2534.

Although *Nassar*'s applicability to section 1981 cases is questionable,[5] the Court finds that plaintiff has adduced sufficient evidence of causation under either standard to meet his "minimal" burden of establishing a *prima facie* case at summary judgment. The record contains sufficient circumstantial evidence of causation to raise a genuine dispute of material fact on both retaliation claims. The following items, at minimum, demonstrate a genuine dispute as to causation: protracted delays continuing even after plaintiff reopened communications in December 2014; Dr. Beaupre, GSH's CEO, allegedly ending an unrelated sit-down meeting with plaintiff in June 2015 after plaintiff refused to talk about the litigation; GSH's continuing struggles with implementation of plaintiff's proctoring program in 2015 and 2016; delays with filing the agreed NPDB revision in late 2015; plaintiff's removal from the Cancer Care Committee in 2015; and the MEC's nullification of plaintiff's election as Chief of Surgery in 2015.

Considering all of the evidence in the light most favorable to plaintiff, the record demonstrates a genuine dispute of material fact on the issue of causation. As such, the Court holds that plaintiff has met his minimal burden to demonstrate a *prima facie* case at the summary

---

force in a § 1981 action")). The Ninth Circuit recently extended *Nassar*'s heightened "but-for" causation standard to ADA retaliation claims. *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 795 F.3d 1067, 1088 (9th Cir. 2015). While the Ninth Circuit has not directly held that the *Nassar* standard applies in section 1981 cases, *see Peterson v. Nat'l Sec. Technologies*, 650 F. App'x 476, 478 n.1 (9th Cir. 2016) (unpublished memorandum opinion), the Court observes that other circuits have applied *Nassar*'s "but-for" causation standard to section 1981 retaliation claims. *See*, *e.g.*, *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2015); *Wright v St. Vincent Health Sys.*, 730 F.3d 732, 737-38, n.5 (8th Cir. 2013).

[5] The Supreme Court reached its holding in *Nassar* based, in part, on "Title VII's detailed structure[,]" as compared to other, more "broadly worded antidiscrimination statutes[.]" *See* 133 S. Ct. at 2532-33; *see also id.* at 2530 (dictum) ("Unlike Title IX, § 1981, § 1982, and the federal-sector provisions of the ADEA, Title VII is a detailed statutory scheme."); *id.* at 2532-33 ("[W]hile the Court has inferred a congressional intent to prohibit retaliation when confronted with broadly worded antidiscrimination statutes, Title VII's detailed structure makes that inference inappropriate here."). The Court's decision appears to be limited to detailed statutory schemes like Title VII and the ADA. *See id.* at 2531.

10

judgment stage.

## II.     Legitimate, Nondiscriminatory Reason

Under *McDonnell Douglas*, the burden now shifts to defendants. The Court must determine whether defendants have shown legitimate, non-discriminatory reasons for the adverse actions. To meet their burden at this stage, defendants must clearly set forth, through the introduction of admissible evidence, reasons for the adverse actions "which, if believed by the trier of fact, would support a finding that the employment action was not a result of unlawful discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169 (9th Cir. 2007) (citing *Burdine*, 450 U.S. at 255). Defendants offer several nondiscriminatory reasons for the delays with finalizing and implementing plaintiff's proctoring program, and for delays with updating the NPDB. For purposes of this order, the Court will assume that defendants' reasons are sufficient.

## III.    Pretext

Because defendants have come forward with legitimate, nondiscriminatory reasons to explain the alleged adverse actions, the final burden rests with plaintiff to establish that defendants' proffered motives are merely a pretext for retaliation. At summary judgment, plaintiff must demonstrate that there is a genuine dispute of material fact as to the legitimacy of defendants' reasons for the delays. *See Noyes*, 488 F.3d at 1169.

Pretext may be demonstrated by direct evidence showing the employer's discriminatory motive, or by circumstantial evidence that undermines the credibility of the employer's articulated reasons. *Noyes*, 488 F.3d at 1170-71; *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). Circumstantial evidence must be "specific" and "substantial" in order to create a triable issue with respect to whether the employer intended to discriminate. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998); *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003); *see also Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (citation and internal quotation marks omitted) ("To avoid summary judgment, [the plaintiff] must do more than establish a *prima facie* case and deny the credibility of the defendant's witnesses. She must

11

produce specific, substantial evidence of pretext."). "All of the evidence as to pretext—whether direct or indirect—is to be considered cumulatively." *Noyes*, 488 F.3d at 1170 (citation and internal quotation marks omitted).

The Court finds that plaintiff has met his burden to show genuine disputes of material fact concerning pretext at the summary judgment stage. Plaintiff offers sufficient indirect evidence to undermine the credibility of defendants' reasons. One such item is defendants' handling of the 2015 election for GSH's Chair of the Department of Surgery. Initially, plaintiff was listed on the ballot, but the MEC decided to remove him because he was not in "good standing." Plaintiff objected, and the MEC eventually put his name back on the ballot. At the same time, however, the MEC removed plaintiff from the Cancer Care Committee. The Chair of Surgery ballot proceeded and plaintiff's peers elected him. Afterwards, the MEC voted and declined to ratify plaintiff's election, nullifying the election results. Defendants argue that the MEC's decision to reject the election results could have been based on other issues with the plaintiff, such as behavioral complaints or surgical misconduct. Reply (Dkt. No. 196-3) at 10.

At this stage of the proceedings, there are genuine issues of material fact that must be resolved at trial. Based on the record, a reasonable fact finder could conclude that defendants' reasons for the extensive and protracted delays are unworthy of credence. The Court hereby DENIES the hospital defendants' motion for summary judgment as to liability. However, because plaintiff has pointed to no evidence demonstrating personal responsibility on behalf of Dr. Schwartz and Dr. Wilbur, the Court GRANTS summary judgment as to these individual defendants.

## IV. Damages

Defendants also move for summary judgment on plaintiff's damages, arguing that plaintiff cannot prove that he actually suffered any harm from the retaliation claims in the fourth amended complaint. Mot. (Dkt. No. 173-3) at 21-25; Reply (Dkt. No. 196-3) at 14-15. The Court finds that genuine disputes of material fact exist regarding plaintiff's alleged damages. These issues are best reserved for decision by a jury on a full record. The Court hereby DENIES defendants' motion for

summary judgment as to damages.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES defendants' motion for summary judgment as to the hospital defendants and GRANTS defendants' motion as to the individual defendants, Dr. Schwartz and Dr. Wilbur. The trial in this matter will be a clean slate. This order does not establish anything for purposes of trial.

This order resolves Dkt. No. 176.

**IT IS SO ORDERED**.

Dated:   November 21, 2016

_____
SUSAN ILLSTON
United States District Judge

13