UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. AUGUSTO BASTIDAS,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOD SAMARITAN HOSPITAL LP, et al.,<br><br>    Defendants. | Case No. 3:13-cv-04388-SI<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>Re: Dkt. No. 218 |

**BACKGROUND**

This dispute arises out of defendant Good Samaritan Hospital's ("GSH's") suspension of plaintiff's surgical privileges. Plaintiff initially filed this suit alleging discrimination and disparate treatment based on race. After substantial motion practice, plaintiff's two remaining claims are for retaliation under 42 U.S.C. § 1981. Plaintiff seeks to prove at trial that defendants retaliated against him for filing and prosecuting his discrimination lawsuit. Plaintiff will seek to prove that defendants: (1) unreasonably and intentionally delayed finalizing and implementing plaintiff's surgical proctoring program ("FPPE"); and (2) unreasonably and intentionally delayed updating the National Practitioner Data Bank ("NPDB") with details of plaintiff's limited suspension.

This case is set for trial on **June 5, 2017.** In anticipation of trial, defendant has filed six motions in limine, asking the Court to exclude or limit evidence. In particular, defendant seeks to exclude or limit: (1) evidence of prior court orders; (2) evidence or argument relating to plaintiff's June 4, 2015 meeting with Dr. Paul Beaupre; (3) testimony from Dr. James Lilja; (4) testimony about plaintiff's emotional distress; (5) evidence of plaintiff's professional memberships, awards, and presentations; and (6) damages calculations. These motions are appropriate for decision without oral argument.

**DISCUSSION**

**I. Prior Court Orders**

Defendant seeks to limit plaintiff's introduction of the Court's prior orders in this case, which plaintiff intends to use to outline the procedural progress of the case and to demonstrate that plaintiff engaged in a "protected activity" — namely, filing this lawsuit against defendant. Opp'n (Dkt. No. 226) at 3-4. Defendant does not dispute that filing this lawsuit is a protected activity, Reply (Dkt. No. 230) at 3, and is willing to stipulate to the "occurrence and timing of relevant procedural events in this case." *Id.* Accordingly, plaintiff does not need to introduce the content of prior Court orders to show that he engaged in a protected activity.

Plaintiff also contends that the "jury is entitled to know that defendants had fair notice that their delays could be found to be retaliatory, and when defendant knew this." Opp'n (Dkt. No. 226) at 4. Specifically, plaintiff wants to introduce the following language from the Court's March 15, 2016 Order Granting in Part and Denying in Part Defendants' Motion to Dismiss:

> Defendants were therefore on notice that the Court considered the prosecution of this case to be a protected activity, and that any alleged retaliatory acts following the filing of this compliant having to do with a failure to timely institute a proctoring plan, or limiting Dr. Bastidas's surgical privileges, would be carefully scrutinized.

*Id.* (citing Order on Motion to Dismiss (Dkt. No. 152) at 3).

Order excerpts, such as the one above, are of questionable relevance, and they pose a substantial danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. *See* Fed. R. Evid. 403. As such, the parties may stipulate to a procedural timeline that includes dates of various Court orders, but the content of the orders will be excluded under Rule 403. Defendant's first motion in limine is GRANTED.

**II. June 2015 Meeting with Dr. Paul Beaupre**

Defendant's second motion in limine seeks to exclude evidence or argument related to plaintiff's June 4, 2015 meeting with Dr. Paul Beaupre, GSH's former CEO. On June 4, 2015, plaintiff and Dr. Paul Beaupre met in Beaupre's office to discuss plaintiff's general surgery emergency room call contract. Plaintiff alleges that during the meeting, Dr. Beaupre demanded

2

that plaintiff apologize for filing this discrimination lawsuit. After plaintiff refused to apologize, Beaupre allegedly "kicked him out" of his office.

Defendant first argues that evidence about this meeting is irrelevant because implementing the FPPE and amending the NPDB fell outside Dr. Beaupre's bailiwick. Mot. (Dkt. No. 218) at 4-5. However, even accepting defendant's argument that Dr. Beaupre was cut off from medical staff decision-making,[1] the meeting is relevant because it may suggest an antagonistic relationship between GSH and Dr. Bastidas. A breakdown in plaintiff's relationship with the GSH CEO could be seen as part of an ongoing "pattern of antagonism." Under Rule 401's extremely broad standard, this evidence is relevant.

Defendant also argues that evidence of the meeting should be excluded under Rule 403, because its probative value is substantially outweighed by a danger of confusing the issues and unfair prejudice. Defendant argues that the meeting concerned plaintiff's call contract, which is not at issue here, and that Dr. Beaupre's view of plaintiff's lawsuit is irrelevant to his retaliation claim, and thus likely to confuse the jury. *See* Reply (Dkt. No. 230) at 5. However, nothing suggests that defendant's concerns substantially outweigh the evidence's probative value. Plaintiff alleges that Dr. Beaupre asked him to apologize for accusing Beaupre of being "racist" in his lawsuit and then kicked plaintiff out of his office when he declined to talk about the lawsuit. Although dramatic, both sides will have the opportunity to present their version of the meeting. Evidence of the meeting is probative because it casts doubt on defendant's stated reasons for the NPDB and FPPE delays, two central issues of the case.

Evidence concerning the meeting is probative, and its value is not substantially outweighed by the risk of confusion or prejudice. Defendant's second motion in limine is DENIED.

**III. Dr. James Lilja**

Plaintiff intends to introduce the testimony of Dr. James Lilja, plaintiff's friend and colleague, to show:

---

[1] Which, based on the parties' filings, appears to be in dispute.

3

> The qualifications, quality of care of Dr. Bastidas in oncology treatment; the consequences of continued suspension of Dr. Bastidas and of an adverse NPDB report; interaction with the medical community; effect of exclusion from cancer clinical activities; patient referral patterns; recruitment of medical associates; advanced cancer care alternatives.

Opp'n (Dkt. No. 226) at 7.

Defendant moves to exclude this evidence on two bases. First, defendant argues that Dr. Lilja's testimony should be excluded because plaintiff failed to disclose Dr. Lilja as a witness pursuant to Rule 26(a). Second, defendant argues that Dr. Lilja's testimony is inadmissible opinion testimony under Rule 701 because it relies upon Dr. Lilja's specialized knowledge.

### A. Failure to Disclose

Defendant states that plaintiff first disclosed Dr. Lilja as a witness in his list of trial witnesses. Mot. at 6. Plaintiff's initial disclosure of witnesses did not specifically name Dr. Lilja, but plaintiff argues that Dr. Lilja fell into the statement's catch-all language:

> Other as yet unidentified doctors at Good Samaritan Hospital and elsewhere, who have information about Dr. Bastidas' privileges and whose identities will be obtained by further investigation and discovery.

Opp'n (Dkt. No. 226) at 7.

Plaintiff also argues that the Fourth Amended Complaint "contained allegations about the HIPEC trials Dr. Bastidas was doing with Dr. Lilja," thereby giving defendant notice Dr. Lilja would be a witness. *Id*. Similarly, plaintiff argues that "Dr. Bastidas testified about [Dr. Lilja] on two occasions in Dr. Bastidas' deposition." *Id*. Plaintiff argues that both the complaint and deposition thus gave defendant the required notice.

Federal Rule of Civil Procedure 26(e) provides:

**(1) *In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

   **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

FED. R. CIV. P. 26(e)(1)(A). In addition, Federal Rule of Civil Procedure 37 provides:

4

**(1) *Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c)(1). Rule 37 is a "'self-executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of material . . . ." *Yeti by Molly, LTD. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (quoting FED. R. CIV. P. 37 advisory committee's note (1993)).

Here, plaintiff's Fourth Amended Complaint does not mention Dr. Lilja by name. *See* FAC (Dkt. No. 140). Plaintiff's disclosure statement did not list Dr. Lilja as a witness. This suggests that when plaintiff drafted his complaint, he did not consider Dr. Lilja a likely witness. If plaintiff apparently did not consider Dr. Lilja a witness when drafting the complaint, defendant should not have expected Dr. Lilja to testify.

Furthermore, although Rule 26(e)(1)(A) only requires disclosure of facts "not otherwise [] made known to the other parties during the discovery process," the statement that "Dr. Bastidas testified about [Dr. Lilja] on two occasions in Dr. Bastidas' deposition," without any more specificity, does not establish that defendant learned through the discovery process that Dr. Lilja would act as witness. Plaintiff's initial disclosure statement reserved the right to call on "as yet unidentified doctors." Dr. Lilja appears to be a doctor plaintiff subsequently identified as a witness. Yet plaintiff did not supplement his initial response to make this known to defendant. Thus, plaintiff violated Rule 26(e).

Rule 37 provides that a witness may be excluded as a result of a party's failure to supplement discovery unless the failure is harmless or justifiable. "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Yeti by Molly, LTD.*, 259 F.3d at 1107. Plaintiff has not argued that the omission is either harmless or justifiable.

### B.     Testimony

Defendant separately argues that Dr. Lilja's testimony would constitute inadmissible expert testimony because it would be based on Dr. Lilja's "specialized knowledge as a surgeon to explain how Plaintiff allegedly suffered damages as a result of his suspension." Mot. (Dkt. No. 218) at 7. Plaintiff argues that Dr. Lilja's proffered testimony is valid lay witness opinion

1  testimony under Rule 701.

2  Rule 701 states:

3  If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

Lay opinion testimony "results from a process of reasoning familiar in everyday life." FED. R. EVID. 701, Committee Notes on Rules — 2000 Amendment. Expert opinion testimony "results from a process of reasoning which can be mastered only by specialists in the field." *Id*. Element (c) is intended "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Id*. Element (c) is not intended to affect the basic forms of evidence like "competency of a person." *Id*.; *see United States v. Figueroa-Lopez*, 125 F.3d 1241, 1245-46 (9th Cir. 1997).

Plaintiff intends to offer Dr. Lilja's testimony as to "[t]he qualifications, quality of care of Dr. Bastidas in oncology treatment." Opp'n (Dkt. No. 226) at 7. One doctor's evaluation of another's quality of care is beyond the bounds of lay opinion testimony. Opinion testimony as to whether plaintiff is a good cancer surgeon unquestionably involves "scientific, technical, or other specialized knowledge" squarely within the scope of Rule 702. *See* FED. R. EVID. 701(c).

In addition , plaintiff seeks to have Dr. Lilja testify to:

the consequences of continued suspension of Dr. Bastidas and of an adverse NPDB report; interaction with the medical community; effect of exclusion from cancer clinical activities; patient referral patterns; recruitment of medical associates; advanced cancer care alternatives.

Opp'n (Dkt. No. 226) at 7. This proposed testimony is improper expert testimony, is based on speculation and/or should be excluded under Rule 403 due to its potential to mislead the jury.

Based on plaintiff's untimely and insufficient disclosure of Dr. Lilja as a witness, as well as the risk of Dr. Lilja improperly testifying as an expert, defendant's motion to exclude this testimony is GRANTED.

**IV. Emotional Distress Damages**

Defendant argues that plaintiff should be barred from introducing evidence that he suffered emotional distress because plaintiff failed to allege emotional distress as a theory of damages. Mot. (Dkt. No. 218) at 7-8. Plaintiff argues that his Fourth Amended Complaint seeks recovery of general damages, and that general damages include damages for emotional distress. Opp'n (Dkt. No. 226) at 8-9.

Federal pleading standards distinguish between general and special damages:

> General damages typically are those elements of injury that are the proximate and foreseeable consequence of defendant's conduct. Special damages are those elements of damages that are the natural, but not the necessary or usual, consequence of defendant's conduct, and typically stem from and depend upon the particular circumstances of the case.

5A Charles Alan Wright, Arthur R. Miller et al. *Federal Practice & Procedure* § 1310 (3d ed. 2005).

A plaintiff is not required to plead general damages with particularity. *Waypoint Biomedical, Inc. v. Convenience Store Brokers, Inc.*, 07-8163, 2008 WL 4500554, at *3 (C.D. Cal. Oct. 6, 2008) ("Moreover, plaintiff is not required to plead damages with particularity because they are not seeking 'special damages.'") (citing *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002)). In contrast, special damages must be pled with particularity because such damages are "unusual for the type of claim in question—[they] are not the natural damages associated with such a claim." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir. 1995).

Neither party cites useful case law on this question. From plaintiff's perspective, damages for emotional distress are a foreseeable consequence of a retaliation claim, which consists of adverse employment actions that are likely to deter an employee from engaging in a protected activity. A foreseeable effect of an adverse action is "garden variety" emotional distress, including fear, anxiety, or frustration. *Cf. Botosan v. Fitzhugh*, 13 F. Supp. 2d 1047, 1053 (S.D. Cal. 1998) ("The Court cannot hold that 'serious emotional and physical injuries' necessarily stem from encountering architectural barriers in a restaurant. These items therefore constitute special damages."). From defendant's perspective, plaintiff filed five separate complaints in this action over the course of several years and never indicated that he suffered from emotional distress. The

7

1  issue, surprisingly, never came up during discovery. Plaintiff's fourth amended complaint appears to have pled no facts suggesting that plaintiff would seek damages for emotional distress.

Although the question is a close one, the Court finds that plaintiff may seek damages for emotional distress. The burden of proof will be on plaintiff to put forth admissible evidence, properly disclosed during the process of pretrial discovery, sufficient to establish emotional distress. Defendant's motion is DENIED.

## V. Certificates, Awards, and Presentations

Defendant moves to exclude plaintiff's evidence of certificates of membership in professional organizations, awards for serving in leadership positions, and two 2015 Power Point presentations. Defendant argues that each item of evidence should be excluded as hearsay. Mot. (Dkt. No. 218) at 8-9. Plaintiff responds, with little explanation, that the evidence is being introduced "as useful for the jury in establishing context among the facts presented in this action." Opp'n (Dkt. No. 226) at 10 (citing FED. R. EVID. 901, 902, 1001-1004).

Federal Rule of Evidence 802 bars out-of-court statements offered to prove "the truth of the matter asserted in the statement." FED. R. EVID. 801(c), 802. Federal Rule of Evidence 901 describes the process for authenticating evidence. *Id*. 901. Federal Rule of Evidence 902 defines self-authenticating evidence. *Id*. 902. Federal Rules of Evidence 1001-1004 define terms, describe the requirements of an original, and describe the admissibility of duplicates and other evidence. *Id*. 1001-1004.

Plaintiff fails to explain how the proffered evidence can establish "context" without being offered for the truth of the matter asserted. As a result, most of the tangible evidence will be excluded as hearsay. Plaintiff may, of course, testify about these affiliations and achievements, which in any event defendants are willing stipulate about. Mot. (Dkt. No. 218) at 9 ("Defendants do not object to Plaintiff testifying about his professional achievements (and would be willing to stipulate to them) . . . .").

Plaintiff seeks to introduce certificates establishing his membership in various professional organizations, arguing that this evidence will corroborate plaintiff's testimony about his

8

1   professional affiliations. This is a hearsay purpose, and is not permissible.

2   Plaintiff also seeks to introduce two certificate/awards received for serving in hospital leadership. Wong Decl., Exs. 6, 7 (Dkt. No. 218). Plaintiff argues that the "'visual' will assist some jurors in determining the fact and placing it in context," and that "[t]he contrast of [GSH's position] with the situation at El Camino where he was given commemorative awards is relevant and striking." Opp'n (Dkt. No. 226) at 11. Again, these are hearsay purposes, which depend on the truth of the content of the documents.

Finally, plaintiff wishes to use two Power Point slide decks reflecting presentations that plaintiff gave to his peers. He asserts that the presentations would show "Dr. Bastidas' proficiency as a surgeon for complex oncology procedures." *Id*. Defendant argues the Power Point presentations should be excluded "because Plaintiff has not identified any appropriate use for them at trial." Reply (Dkt. No. 230) at 9.

The first presentation, titled "Pancreas Cancer: is it still a surgical disease?", was delivered January 27, 2015. It relates to general facts, general trends and general statistics. It did not focus on the particular surgery involved in this case, the Whipple Reconstruction. Defendant argues that this presentation is largely irrelevant and presents a substantial risk of confusing the jury, confusing the issues, and wasting time, which would far outweigh its probative value. The Court agrees.

The second presentation, titled "Optimizing Post-op Surgical care/outcomes," was delivered on May 8, 2015. This presentation breaks down the surgery process into three steps: pre-operative optimization, intra-operation issues, and post-operation issues. The presentation includes six slides on Whipple procedures. Much of the material appears directly relevant to the surgical process, explaining how to perform safe and consistent surgeries. The presentation is probative for showing plaintiff's competency as a surgeon because it focuses on optimizing surgical processes. Plaintiff's presentation of this material to an audience of his peers speaks to his competency as a surgeon and thus counters the adverse reports that defendant cites to question plaintiff's competence. Because the presentation focuses directly on surgical processes, there is less risk of confusing the jury or wasting time. Accordingly, the "Optimizing Post-op Surgical

9

1 care/outcomes" presentation will be allowed.

Defendant's motion to exclude is GRANTED with respect to the membership affiliations, awards, and first Power Point presentation. Defendant's motion is DENIED with respect to the second Power Point presentation entitled "Optimizing Post-op Surgical care/outcomes."

## VI. Dr. Bastidas' Damages Calculations

Plaintiff submits two damages calculations that apparently project the financial losses that plaintiff claims to have suffered or anticipates suffering from defendant's alleged retaliation. Plaintiff did not disclose these damages calculations to defendants until February 7, 2017, "the day of the filing of the pretrial statement." Mot. (Dkt. No. 218) at 10. Defendant argues that because plaintiff failed to timely disclose the two damage calculations, they should be excluded pursuant to Federal Rules of Civil Procedure 26(a) and 37.

Rule 26(a) requires a party disclose "a computation of each category of damages claimed by the disclosing party." FED. R. CIV. P. 26(a)(1)(A)(iii). Rule 26(e) requires a party who has made a disclosure under Rule 26(a) to supplement its initial disclosures if the party learns the initial disclosure was incomplete. FED. R. CIV. P. 26(e)(1)(a).

Rule 37(c)(1) "gives teeth" to Rule 26(a) and (e)'s requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd.*, 259 F.3d at 1106. To avoid sanction, a party must show the failure to disclose information was either "substantially justified" or "harmless." *Id.* A district court has "particularly wide latitude" to determine whether a failure to disclose is "substantially justified" or "harmless." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).

In this case, fact discovery closed on July 8, 2016, and the disputed damage calculations were not submitted to defendant until February 7, 2017. Mot. (Dkt. No. 218) at 10. Plaintiff does not argue that the failure to disclose was either "substantially justified" or "harmless." Opp'n (Dkt. No. 226) at 12-15.

Plaintiff argues that the damages calculations should be admitted because plaintiff sent defendant the figures used to make the calculations. This argument fails because the figures alone

10

do not explain the assumptions required for plaintiff's calculations. Rule 26(a)(1)(A)(iii) requires "a computation of each category of damages," as well as "evidentiary material . . . on which each computation is based." FED. R. CIV. P. 26(a)(1)(A)(iii). Plaintiff turned over the "evidentiary materials," but failed to turn over each computation until the last minute. Page 1 of Exhibit 11 illustrates why this is problematic. Wong Decl. Ex. 11 (Dkt. No. 218-13). This page of the exhibit consists of a table and graph with the hand-written title "loss from pancreas cases." *Id.* The graph and table assume that plaintiff will perform 15 Whipple surgeries per year until 2024, yet they also show that in prior years plaintiff *never* performed 15 Whipple surgeries in a given year. The table also includes loss projections based on the assumption that plaintiff would increase his workload to 25 Whipple cases per year. During discovery, defendant had no opportunity to ask plaintiff about either set of assumptions. Defendant had no opportunity to pursue its own discovery on either point. Accordingly, plaintiff's disclosure of the data on which the damage calculations were based does not suffice to meet plaintiff's obligation under Rule 26(a).

Finally, plaintiff argues that defendants "have sought to exclude all written evidence of damages, except Dr. Bastidas' extensive tax returns." Opp'n (Dkt. No. 226) at 13. To the contrary, defendants' discovery designations include almost all of the information that plaintiff's damages calculations rely upon, such as surgeries performed, surgery income, and consulting income. Joint Pretrial Statement (Dkt. No. 216) at 3. Plaintiff can use this evidence to offer lay opinion about the damages he suffered. Accordingly, plaintiff will still have the ability to offer evidence about damages.

Defendant's motion to exclude these tables and graphs is GRANTED.

## CONCLUSION

**Motion No. 1**: To exclude evidence of prior court orders, including the Court's rulings on prior motions to dismiss. Provided that defendant stipulates to the "occurrence and timing of relevant procedural events in this case," this motion is GRANTED.

11

**Motion No. 2**: To exclude testimony about plaintiff's June 4, 2015 meeting with Good Samaritan Hospital CEO Dr. Paul Beaupre, at which Dr. Beaupre allegedly asked plaintiff to apologize for filing a lawsuit alleging racial discrimination and ordered plaintiff from his office when plaintiff refused to apologize. This motion is DENIED.

**Motion No. 3:** To exclude the testimony of Dr. James Lilja. This motion is GRANTED.

**Motion No. 4:** To exclude all evidence relating to emotional distress damages. This motion is DENIED.

**Motion No. 5:** To exclude tangible evidence of plaintiff's professional membership affiliations, plaintiff's awards, and plaintiff's presentations to peers. This motion is GRANTED as to certificates and other tangible things reflecting plaintiff's professional membership affiliations and awards, and as to the first Power Point presentation. This motion is DENIED as to plaintiff's second Power Point Presentation.

**Motion No. 6:** To exclude evidence of plaintiff's damage calculations. This motion is GRANTED.

**IT IS SO ORDERED**.

Dated: April 12, 2017

_____
SUSAN ILLSTON
United States District Judge